Mark J. Giunta (#015079)
Law Office of Mark J. Giunta
1413 N. 3rd St.
Phoenix, AZ 85004-1612
Phone (602) 307-0837
Fax (602) 307-0838
Email mark.giunta@azbar.org

Attorney for Debtor

**IT IS HEREBY ADJUDGED and DECREED this is SO ORDERED.**

The party obtaining this order is responsible for noticing it pursuant to Local Rule 9022-1.

**Dated: November 23, 2010**



_Randolph J. Haines_

**RANDOLPH J. HAINES**
**U.S. Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceeding |
| MENDOCINO REALTY, L.L.C., | Case No. 2:09-bk-27737-RJH |
|          Debtor. | **ORDER CONFIRMING FIRST AMENDED PLAN OF REORGANIZATION DATED MARCH 1, 2010 OF MENDOCINO REALTY, L.L.C. UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE** |

       Mendocino Realty, LLC, the Debtor and debtor-in-possession in the above captioned Chapter 11 proceeding ("Debtor") , having filed its First Amended Plan of Reorganization Dated March 1, 2010 ("Plan") (a copy of the Plan is attached hereto at Exhibit 1) under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), and the Debtor's Disclosure Statement In Support Of First Amended Plan Of Reorganization Dated March 1, 2010 (the "Amended Disclosure Statement"), having been approved by Order of this Court dated March 2, 2010 (the "Amended Disclosure Statement Order"), as containing adequate information as such term is defined under § 1125 of the Bankruptcy Code; and it having been determined after hearing with notice that:

1.      At least one impaired class of claims has accepted the Plan, to determine without including any acceptance of the Plan by any insider holding a claim of such class;

2.      As set forth in the initial Ballot Report filed with the Court, at least 2 secured classes, Classes 3(N) and 3(Q) voted to accept the Plan.

3.      Class 4, the deficiency unsecured class, voted to accept the Plan and no votes were received under Class 4 rejecting the Plan;

4.      Class 5, the general unsecured class, received 2 votes accepting the Plan and no votes were received under Class 5;

5.      Debtor has complied with all applicable Bankruptcy Code provisions and proposed its Plan in a manner that complies with the Bankruptcy Code;

6.      Debtor has proposed the Plan in good faith and not by any means forbidden by law;

7.      The Plan provides for professional fee applications to be submitted to the Court and approved as reasonable before being authorized for payment;

8.      The Plan discloses that the Reorganized Debtor shall serve as the Disbursing Agent under the Plan and shall only be compensated for out of pocket expenses.

9.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to this Debtor or, to the minimal extent that it does apply, the Debtor has complied sufficiently with such requirements.

10.      The Plan provides that each holder of a claim or interest will receive or retain on account of such claim or interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date;

1       11.     All creditors who have filed written objections to the Plan have withdrawn their

2   objections and no objections from any creditor to the Plan were presented at the confirmation

3   hearing;

4       12.     The Debtor and numerous Secured Creditors presented the Court with a number

5   of modifications of the Allowed Secured Claim amounts pursuant to Section 506. These Secured

6   Creditor Classes have either voted in favor of the Plan or agreed through Stipulations, previously

7   filed or set forth directly in this Order or on the record during the confirmation hearing to the

8   following Allowed Secured Claim values for each of the following Classes, to withdraw any

9   objections they had to the Plan:

| Class | Agreed 506 Valuation |
|-------|----------------------|
| 3A    | $88,000.00           |
| 3B    | $128,571.00          |
| 3C    | $101,000.00          |
| 3D    | $87,500.00           |
| 3E    | $88,500.00           |
| 3F    | $87,500.00           |
| 3G    | $57,000.00           |
| 3H    | $101,000.00          |
| 3I    | $107,000.00          |
| 3J    | $37,500.00           |
| 3K    | $91,500.00           |
| 3L    | $57,500.00           |
| 3M    | $51,500.00           |
| 3N    | $69,000.00           |
| 3O    | $32,500.00           |
| 3P    | $118,500.00          |
| 3Q    | Payment per statute  |

A summary of the stipulations are set forth in Exhibit 2 attached hereto.

13.     Class 3(N) Claimant, the Bank of New York Mellon Trust Company, National Association FKS The Bank Of New York Trust Company, N.A. As Successor To JP Morgan Chase Bank N.A. As Trustee For Ramp 2005RS8 (formerly identified in the Plan as GMAC/Homecomings Financial) and the Debtor reached and filed a Stipulation regarding Class 3(N)'s Secured Claim Allowance and Treatment on March 27, 2010 (Docket # 87), a copy of which is attached hereto as Exhibit 3.  This Stipulation is hereby incorporated in, and modifies, the Plan.

14.     Class 3(E) Claimant, the Bank of New York Mellon Trust Company, National Association FKS The Bank Of New York Trust Company, N.A. As Successor To JP Morgan Chase Bank N.A. As Trustee For Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-7, Mortgage Pass-Through Certificates Series 2005-7 by its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc. (formerly identified in the Plan as the servicer American Service Corporation) and the Debtor reached and filed a Stipulation regarding Class 3(E)'s Secured Claim Allowance and Treatment on September 30, 2010 (Docket # 137), a copy of which is attached hereto as Exhibit 4.  This Stipulation is hereby incorporated in, and modifies, the Plan.

15.     Class 3(M) Claimant, the Bank of New York Mellon formerly known as The Bank Of New York as successor Trustee to JP Morgan Chase Bank N.A. As Trustee For Certificate Holders Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-7, Mortgage Pass-Through Certificates Series 2005-10 (formerly identified in the Plan as EMC Home Mortgage Corporation) and the Debtor reached and filed a Stipulation regarding Class 3(M)'s Secured Claim Allowance and Treatment on September 30, 2010 (Docket # 138), a

copy of which is attached hereto as Exhibit 5. This Stipulation is hereby incorporated in, and modifies, the Plan.

16.     Class 3(D) Claimant, the Bank of New York Mellon, fka The Bank Of New York as Successor in interest to JP Morgan Chase Bank N.A. As Trustee For Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-7, Mortgage Pass-Through Certificates Series 2005-7 by its Attorney in fact Wells Fargo Bank, N.A. (formerly identified in the Plan as the servicer American Service Corporation) and the Debtor reached and filed a Stipulation regarding Class 3(D)'s Secured Claim Allowance and Treatment on September 30, 2010 (Docket # 139), a copy of which is attached hereto as Exhibit 6. This Stipulation is hereby incorporated in, and modifies, the Plan.

17.     Class 3(H) Claimant, the Bank of New York Mellon, fka The Bank Of New York as Successor in interest to JP Morgan Chase Bank N.A. As Trustee For Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-9, Mortgage Pass-Through Certificates Series 2005-9 by its Attorney in fact Wells Fargo Bank, N.A. (formerly identified in the Plan as the servicer American Service Corporation) and the Debtor reached and filed a Stipulation regarding Class 3(H)'s Secured Claim Allowance and Treatment on September 30, 2010 (Docket # 140), a copy of which is attached hereto as Exhibit 7. This Stipulation is hereby incorporated in, and modifies, the Plan.

18.     Class 3(I) Claimant, the Bank of New York Mellon, fka The Bank Of New York as Successor in interest to JP Morgan Chase Bank N.A. As Trustee For Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-4, Mortgage Pass-Through Certificates Series 2005-4 by its Attorney in fact Wells Fargo Bank, N.A. (formerly identified in the Plan as the servicer American Service Corporation) and the Debtor reached and filed a

Stipulation regarding Class 3(I)'s Secured Claim Allowance and Treatment on September 30, 2010 (Docket # 141), a copy of which is attached hereto as Exhibit 8. This Stipulation is hereby incorporated in, and modifies, the Plan.

19.     Class 3(G) Claimant, the Bank of New York Mellon, fka The Bank Of New York as Successor in interest to JP Morgan Chase Bank N.A. As Trustee For Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-7, Mortgage Pass-Through Certificates Series 2005-7 by its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc. (formerly identified in the Plan as the servicer American Service Corporation) and the Debtor reached and filed a Stipulation regarding Class 3(G)'s Secured Claim Allowance and Treatment on September 30, 2010 (Docket # 142), a copy of which is attached hereto as Exhibit 9. This Stipulation is hereby incorporated in, and modifies, the Plan.

20.     Class 3(F) Claimant, the Bank of New York Mellon, fka The Bank Of New York as Successor in interest to JP Morgan Chase Bank N.A. As Trustee For Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-5, Mortgage Pass-Through Certificates Series 2005-5 by its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc. (formerly identified in the Plan as the servicer American Service Corporation) and the Debtor reached and filed a Stipulation regarding Class 3(F)'s Secured Claim Allowance and Treatment on September 30, 2010 (Docket # 143), a copy of which is attached hereto as Exhibit 10. This Stipulation is hereby incorporated in, and modifies, the Plan.

21.     The Debtor filed with the Court the Declaration of Donald Park dated September 29, 2010 (Docket No. 144) ("Declaration") in support of confirmation of the Plan. Mr. Park is

the authorized representative of Park Holdings, LLC, the sole member and managing member of the Debtor. The Debtor presented additional supporting testimony through Donald Park at the at the confirmation hearing on September 30, 2010. Debtor provided evidence with regard to the values of Debtor's properties that were not subject to previous stipulations between secured creditors and the Debtor particularly with respect to Classes 3(J), 3(K), 3(L), and 3(O).

22.    The following are Stipulations as to Claim Allowance and Treatment that the Debtor and various Secured Creditors have entered or have agreed to, but have not been otherwise filed as a separate Stipulation with the Court. These Stipulations are set forth directly herein as follows, and are hereby incorporated into, and modify, the Plan by this reference:

A.    Class 3(A), American Home Mortgage Servicing, Inc., shall have an Allowed Secured Claim in the amount of $88,000 pursuant to 11 U.S.C. section 506, the Plan and this Order. The Class 3(A) Claimant's Allowed Secured Claim is secured by a lien in property generally described as 11858 N. 30th Drive, Phoenix legally described as: Lot 73, VISTA NORTH NO.2, according to Book 123 of Maps, Page 6, records of Maricopa County, Arizona. Class 3(A)'s Allowed Secured Claim shall be repaid through the Plan with interest fixed at 5.25% per annum and the term of the repayment shall be reduced to the maturity date of original Note.

B.    Class 3(B), American Home Mortgage Servicing, Inc., shall have an Allowed Secured Claim in the amount of $128,571 pursuant to 11 U.S.C. section 506, the Plan and this Order. The Class 3(B) Claimant's Allowed Secured Claim is secured by a lien in property generally described as 3612 E. Altadena Ave., Phoenix, AZ 85028 legally described as: Lot 167, STAR OF PARADIS UNIT THREE, according to Book 104 of Maps, Page 9, records of Maricopa County, Arizona. Class 3(B)'s Claimaint's Allowed Secured Claim shall be repaid

through the Plan with interest fixed at 5.25% per annum and the term of the repayment shall be reduced to the maturity date of original Note.

C.  Class 3(C), American Home Mortgage Servicing, Inc., shall have an Allowed Secured Claim in the amount of $101,000 pursuant to 11 U.S.C. section 506, the Plan and this Order.  The Class 3(C) Claimant's Allowed Secured Claim is secured by a lien in property generally described as 1901 W. Utopia Road, Phoenix, AZ 85027 legally described as: Lot 1, GREEN MEADOWS NO. 3, according to Book 160 of Maps, Page 7, records of Maricopa County, Arizona. Class 3(C)'s Claimaint's Allowed Secured Claim shall be repaid through the Plan with interest fixed at 5.25% per annum and the term of the repayment shall be reduced to the maturity date of original Note.

D.  Class 3(O), JP Morgan Chase Bank, National Association (formerly indentified in the Plan as Washington Mutual Bank which was the predecessor of JP Morgan Chase Bank, ) shall have an Allowed Secured Claim consistent with the existing terms of the Plan in the amount of $32,500 pursuant to 11 U.S.C. section 506, the Plan and this Order. The Class 3(O) Claimant's Allowed Secured Claim is secured by a lien in property generally described as 1108 N. 28th Dr., Phoenix AZ  85009 legally described as: Lot 99, NORTH WILLOW SQUARE, according to Book 57 of Maps, Page 43, records of Maricopa County, Arizona. Class 3(P)'s Claimaint's Allowed Secured Claim shall be repaid through the Plan with interest fixed at 5.25% per annum and the term of the repayment shall be reduced to the maturity date of original Note.

E.  Class 3(P), JP Morgan Chase, National Association, as Successor-in-interest to Washington Mutual Bank, f/k/a Washington Mutual Bank, FA, shall have an Allowed Secured Claim in the amount of $118,500 pursuant to 11 U.S.C. section 506, the Plan

and this Order. The Class 3(P) Claimant's Allowed Secured Claim is secured by a lien in property generally described as 2427 W. Lemarche Avenue, Phoenix, AZ 85023 legally described as: Lot 313, Ponderosa Homes North Unit Four, according to Book 165 of Maps, Page 36, records of Maricopa County, Arizona Class 3(P)'s Claimaint's Allowed Secured Claim shall be repaid through the Plan with interest fixed at 5.25% per annum and the term of the repayment shall be reduced to the maturity date of original Note.

   F. Class 3 (Q), Maricopa County Treasurer ("Maricopa County"), shall have its Allowed Secured Claim paid in five even annual installments commencing one year after the Petition Date and this Allowed Secured Claim shall accrue interest at the statutory rate prescribed by Arizona law.

  23. The following are restatements of a portion of the treatment that certain Secured Creditor receive under the Plan who did not vote for or against the Plan and did not otherwise obtain representation and affirmatively appear or take positions in the case:

   A. Class 3(J), Bank of America, shall have an Allowed Secured Claim in the amount of $35,000 pursuant to 11 U.S.C. section 506, the Plan and this Order. The Class 3(J) Claimant's Allowed Secured Claim is secured by a lien in property generally described as 5601 N. 65th Ave, Glendale AZ 85301 legally described as: Lot 7802, MARYVALE TERRACE 20-A, according to Book 79 of Maps, Page 19, records of Maricopa County, Arizona. Class 3(J)'s Claimaint's Allowed Secured Claim shall be repaid through the Plan with interest fixed at 5.25% per annum over 360 months.

   B. Class 3(K), Bank of America, shall have an Allowed Secured Claim in the amount of $91,500 pursuant to 11 U.S.C. section 506, the Plan and this Order. The Class 3(K) Claimant's Allowed Secured Claim is secured by a lien in property generally described as 109

North 133rd Street, Chandler Arizona 85225 legally described as: Lot 98, COLONIA CORONITA AMENDED, according to Book 185 of Maps, Page 17, records of Maricopa County, Arizona. Class 3(K)'s Claimaint's Allowed Secured Claim shall be repaid through the Plan with interest fixed at 5.25% per annum over 360 months.

C. Class 3(L), Bank of America, shall have an Allowed Secured Claim in the amount of $57,500 pursuant to 11 U.S.C. section 506, the Plan and this Order. The Class 3(L) Claimant's Allowed Secured Claim is secured by a lien in property generally described as 4451 East Hidalgo Avenue, Phoenix AZ 85040 legally described as: Lot 136, BRAEMAR SOUTH UNIT FIVE, according to Book 178 of Maps, Page 11, records of Maricopa County, Arizona. Class 3(L)'s Claimaint's Allowed Secured Claim shall be repaid through the Plan with interest fixed at 5.25% per annum over 360 months.

22. Except as specifically set forth herein in this Order or the Stipulations incorporated herein by reference, each of the Classes identified in the Plan shall be treated in accordance with the terms of the Plan and the Creditors shall be bound by the terms of the Plan.

23. The Court finds that the Debtor's Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Debtor's Plan pursuant to 11 U.S.C. §1129(b).

24. The Plan provisions regarding priority claims comply with Section 1129(a)(9).

25. Based upon the Declaration of Mr. Park, testimony of Mr. Park, and the evidence presented, the Plan appears to be feasible and is unlikely to be followed by either a liquidation or the need for further additional financial reorganization.

26. The Debtor has filed monthly operating reports and has testified to payment of the Trustee's fees. The US Trustee did not appear, file an objection or contend otherwise.

27. The section of the Code, 1129(e)(13) dealing with retiree benefits is not applicable case.

28. Provisions of Section 1129(a)(14) through (16) are not applicable to this case. Based upon all the evidence presented and arguments of counsel made at the confirmation and the entire record of Debtor's Chapter 11 case; and after due deliberation sufficient cause appearing therefore,

**IT IS HEREBY ORDERED** that Debtor's Plan, as amended by the Stipulations referenced, attached, or set forth herein, is hereby confirmed;

**IT IS FURTHER ORDERED** that the Debtor will be known as Mendocino Realty, L.L.C., an Arizona limited liability company (the "Reorganized Debtor");

**IT IS FURTHER ORDERED** that except as otherwise provided in § 1141 of the Bankruptcy Code or in the Plan, this Order Confirming Plan discharges the Debtor from any debt that arose before the date of such confirmation and any debt of a kind specified in 11 U.S.C. § 502(g), 502(h), or 502(i);

**IT IS HEREBY ORDERED** that this Order Confirming Plan discharges the Debtor from the debts as provided in 11 U.S.C. § 1141 and 11 U.S.C. § 524.

**IT IS HEREBY ORDERED** that the Debtor and each of the Creditors are bound by and shall abide by the terms of the Plan.

**DATED AND SIGNED ABOVE**

1 | Approved as to the form and content

2

3

4 | Leonard McDonald, Esq.
5 | Tiffany & Bosco, P.A., Attorney for:

6 | The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JP Morgan Chase
Bank NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-
7 | 7, Mortgage Pass-Through Certificates, Series 2005-7 by its Attorney in fact Wells Fargo Bank, N.A.,
successor by merger to Wells Fargo Home Mortgage Inc. – PROPERTY LOCATED AT 7137 WEST
8 | CINNABAR AVENUE PEORIA, ARIZONA 85345 – Class 3G

9 | The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JP Morgan Chase
Bank NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-
10 | 5, Mortgage Pass-Through Certificates, Series 2005-5 by its Attorney in fact Wells Fargo Bank, N.A.,
successor by merger to Wells Fargo Home Mortgage Inc. PROPERTY LOCATED AT 2242 WEST
11 | CHARLSTON AVENUE PHOENIX, AZ 85023 – Class 3F

12 | The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JP Morgan Chase
Bank NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-
13 | 7, Mortgage Pass-Through Certificates, Series 2005-7 by its Attorney in fact Wells Fargo Bank, N.A.-
PROPERTY LOCATED AT 17243 NORTH 24TH LANE PHOENIX, AZ 85023 – Class 3D

14 | The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JPMorgan Chase
Bank, NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-
15 | 9, Mortgage Pass-Through Certificates, Series 2005-9 by its Attorney in fact Wells Fargo Bank, N.A.-
PROPERTY LOCATED AT 1842 NORTH LAUREL AVENUE PHOENIX, AZ 85007 – Class 3H
16

17 | The Bank of New York Mellon, fka The Bank of New York as Successor-in-interest to JP Morgan Chase
Bank NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A 2005-4,
18 | Mortgage Pass-Through Certificates, Series 2005-4 by its Attorney in fact Wells Fargo Bank, N.A.-
PROPERTY LOCATED AT 2741 EAST SWEETWATER AVENUE PHOENIX, AZ 85032 – Class 3I

19 | The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JP Morgan Chase
Bank NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-
20 | 7, Mortgage Pass-Through Certificates, Series 2005-7 by its Attorney in fact Wells Fargo Bank, N.A.,
successor by merger to Wells Fargo Home Mortgage Inc.- PROPERTY LOCATED AT  5413 WEST
21 | CARIBBEAN LANE GLENDALE, AZ  85306 – Class 3 E

22 | The Bank of New York Mellon formerly known as The Bank of New York as successor Trustee to
JPMorgan Chase Bank, National Association as Trustee for the Certificateholders of Structured Asset
23 | Mortgage Investments II Inc. Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates Series
2005-10- PROPERTY LOCATED AT 1511 W CAMPBELL AVENUE PHOENIX, AZ 85015–Class 3M
24

25

Matthew Silverman, Esq.
McCarthy & Holthus, LLP

1

/s/ Kyle Shelton 027379_____

Kyle Shelton, Esq.

2

Pite Duncan LLP, Attorney For

3

The Bank of New York Mellon Trust Company, National Association FKS The Bank Of New York Trust Company, N.A. As Successor To JP Morgan Chase Bank N.A. As Trustee For Ramp

4

2005RS8

5

JP Morgan Chase Bank, National Association

6

JP Morgan Chase, National Association, as Successor-in-interest to Washington Mutual Bank,

7

f/k/a Washington Mutual Bank

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



**EXHIBIT 1**

Mark J. Giunta (#015079)
Law Office of Mark J. Giunta
1413 N. 3rd St.
Phoenix, AZ 85004-1612
Phone (602) 307-0837
Fax (602) 307-0838
Email mark.giunta@azbar.org

Attorney for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | In Proceedings Under Chapter 11 |
| MENDOCINO REALTY, LLC, | Case No. 2-09-bk-27737-RJH |
| Debtor. | |

**FIRST AMENDED PLAN OF REORGANIZATION DATED MARCH 1, 2010
PROPOSED BY THE DEBTOR**

- 1

# ARTICLE I

## DEFINITIONS

**1.01** **Defined Terms**. The capitalized terms used in this Plan shall have the meanings as set forth in Appendix "A" attached hereto.

**1.02** **Undefined Terms**. Terms and phrases, whether capitalized or not, that are used and not defined in Appendix "A" attached hereto, but are defined by the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code.

**1.03** **Interpretation**. The headings in this Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

# ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

**2.01** **General**. For the purposes of organization only with respect to administrative expenses and for purposes of organization, voting and all Confirmation matters with respect to all Claims of Creditors of the Debtors, this Plan classifies Claims in separate and distinct Classes as follows:

**2.02** **Class 1: Administrative Expenses**. Class 1 shall consist of the costs and expenses of administration as defined in § 503 of the Bankruptcy Code for which application or allowance is made, or a Claim is filed, as the same are allowed, approved, and ordered paid by the Court. Administrative Expenses shall consist of: (1) all Claims arising under § 330 of the Bankruptcy

- 2 -

Code, including reasonable compensation for actual and necessary services rendered by a professional person (including attorneys) and by any paraprofessional persons employed by such, based on, among other things, the nature, extent and value of such services, the time spent on such services, and the cost of comparable services other than in a case under Title 11; (2) the costs and expenses of the administration of this proceeding, including, but not limited to, any Bankruptcy Court Clerk fees or Court Reporter's fees which have not been paid, the cost of reproduction and mailing of this Plan and the Disclosure Statement; (3) any post-petition operating expenses of the Debtors which are due and unpaid at Confirmation; and (4) the actual and necessary costs of preserving the Estate.

Class 1 also expressly includes any outstanding pre-confirmation quarterly fee payments owed by the Debtors to the United States Trustee.

**2.03 Class 2: Priority Claims**. Class 2 consists of all Allowed obligations, including tax obligations, of the Debtors which are entitled to priority under § 507(a)(8) of the Bankruptcy Code. The Debtor is not aware of any Priority Claims at this time.

**2.04 Class 3A: Secured Claim of American Home Mortgage.** Class 3A consists of the Allowed Secured Claim of American Home Mortgage ("AHM") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $112,037 secured by a lien in a first position on a single family home located at 11858 N 30th Drive, Phoenix AZ 85029 ("30th Dr").

**2.05 Class 3B: Secured Claim of American Home Mortgage.** Class 3B consists of the Allowed Secured Claim of American Home Mortgage ("AHM") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $129,487 secured by a lien in

- 3 -

1  a first position on a single family home located at 3612 E Altadena Ave, Phoenix AZ 85028-
2  2104 ("Altadena").

3  **2.06 Class 3C: Secured Claim of American Home Mortgage.**  Class 3C consists of
4  the Allowed Secured Claim of American Home Mortgage ("AHM") which prior to an 11 U.S.C.
5  section 506 determination, has an approximate principal amount of $115,675 secured by a lien in
6  a first position on a single family home located at 1901 W. Utopia Road, Phoenix AZ 85027
7  ("Utopia").
8
9  **2.07 Class 3D: Secured Claim of American Service Corporation.**  Class 3D consists
10  of the Allowed Secured Claim of American Service Corporation ("ASC") which prior to an 11
11  U.S.C. section 506 determination, has an approximate principal amount of $125,226 secured by a
12  lien in a first position on a single family home located at 17243 N. 24th Lane, Phoenix AZ 85023
13  ("24th Lane").

14  **2.08 Class 3E: Secured Claim of American Service Corporation.**  Class 3E consists
15  of the Allowed Secured Claim of American Service Corporation ("ASC") which prior to an 11
16  U.S.C. section 506 determination, has an approximate principal amount of $136,000 secured by a
17  lien in a first position on a single family home located at 5413 W. Carribean Lane, Glendale AZ
18  85306 ("Carribean").
19
20  **2.09 Class 3F: Secured Claim of American Service Corporation.**  Class 3F consists of
21  the Allowed Secured Claim of American Service Corporation ("ASC") which prior to an 11
22  U.S.C. section 506 determination, has an approximate principal amount of $123,1666 secured by
23  a lien in a first position on a single family home located at 2242 W. Charleston Ave. Phoenix AZ
24  85023 ("Charleston").
25

- 4

**2.10 Class 3G: Secured Claim of American Service Corporation.** Class 3G consists of the Allowed Secured Claim of American Service Corporation ("ASC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $126,400 secured by a lien in a first position on a single family home located at 7137 W. Cinnabar, Peoria AZ 85345 ("Cinnabar").

**2.11 Class 3H: Secured Claim of American Service Corporation.** Class 3H consists of the Allowed Secured Claim of American Service Corporation ("ASC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $148,000 secured by a lien in a first position on a single family home located at 1842 N. Laurel Ave, Phoenix AZ 85007 ("Laurel").

**2.12 Class 3I: Secured Claim of American Service Corporation.** Class 3I consists of the Allowed Secured Claim of American Service Corporation ("ASC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $120,000 secured by a lien in a first position on a single family home located at 2741 E. Sweetwater Ave, Phoenix AZ 85032 ("2741 E. Sweetwater").

**2.13 Class 3J: Secured Claim of Bank of America.** Class 3J consists of the Allowed Secured Claim of Bank of America ("BofA") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $81,042 secured by a lien in a first position on a single family home located at 5601 North 65th Ave, Glendale AZ 85301-5620 ("65th Ave").

**2.14 Class 3K: Secured Claim of Bank of America.** Class 3K consists of the Allowed Secured Claim of Bank of America ("BofA") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $99,476 secured by a lien in a first

position on a single family home located at 109 N. 133rd Street, Chandler AZ 85225 ("133rd St").

**2.15 Class 3L: Secured Claim of Bank of America.** Class 3L consists of the Allowed Secured Claim of Bank of America ("BofA") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $94,701 secured by a lien in a first position on a single family home located at 4451 E. Hidalgo Ave, Phoenix AZ 85040 ("Hidalgo").

**2.16 Class 3M: Secured Claim of EMC Mortgage Corporation.** Class 3M consists of the Allowed Secured Claim of EMC Mortgage Corporation ("EMC") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $132,000 secured by a lien in a first position on a single family home located at 1511 W. Campbell Ave, Phoenix AZ 85015-3820 ("Campbell").

**2.17 Class 3N: Secured Claim of GMAC/ Homecomings Financial.** Class 3N consists of the Allowed Secured Claim of GMAC/Homecomings Financial ("GMAC/HF") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $119,968 secured by a lien in a first position on a single family home located at 7340 N 39th Ave, Phoenix AZ 85051 ("39th Ave").

**2.18 Class 3O: Secured Claim of Washington Mutual Bank.** Class 3O consists of the Allowed Secured Claim of Washington Mutual Bank ("WAMU") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $90,395 secured by a lien in a first position on a single family home located at 1108 N. 28th Drive, Phoenix AZ 85009 ("28th Dr").

**2.19 Class 3P: Secured Claim of Washington Mutual Bank.** Class 3P consists of the Allowed Secured Claim of Washington Mutual Bank ("WAMU") which prior to an 11 U.S.C. section 506 determination, has an approximate principal amount of $130,579 secured by a lien in a first position on a single family home located at 2427 W. Le Marche Ave, Phoenix AZ 85023 ("LeMarche").

**2.20 Class 3Q: Secured Claim of Maricopa County Treasurer.** Class 3Q consists of the Allowed Secured Claim of Maricopa County Treasurer ("Maricopa County") which has an approximate principal amount of $21,600 secured by a lien in a senior position on the Debtor's single family homes in Maricopa County.

**2.21 Class 4: Unsecured Creditors Arising On Account of Any Deficiency Claims.** Class 4 consists of the Allowed Unsecured Claims on account of any deficiency claims. These Claims shall be determined after the Court has conducted an 11 U.S.C. section 506 determination of secured status as to the Creditors holding Claims secured by the real property assets of the Debtor. Any Creditors asserting such a Claim must do so by filing a Proof of Claim for the same within 30 days of the date of the entry of the Order by the Court setting forth is 11 U.S.C. section 506 determination of secured status as to that particular Creditor or the date of Confirmation whichever is earlier.

**2.22 Class 5: Claims of General Unsecured Creditors.** Class 5 consists of the Allowed Unsecured Claims, other than the deficiency claims set forth in Class 4.

**2.23 Class 6: Equity Security Holders.** Class 6 consists of the interests of Equity Security Holders which consists of the Debtor's sole member, Park Holdings, LLC.

**2.24 Elimination of Classes.** Any Class that is not occupied as of the date of the hearing on confirmation of this Plan by an Allowed Claim or a Claim temporarily allowed

- 7

pursuant to Rule 3019 of the Bankruptcy Rules shall be deemed deleted from this Plan for purposes of voting on acceptance or rejection of this Plan and for the purpose of determining whether this Plan has been accepted by such Class pursuant to Section 1129 of the Bankruptcy Code.

## ARTICLE III

### IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS

**3.01   Impaired Classes of Claims.**   Classes 3A through 3Q, 4, 5. and 6 are impaired under this Plan.  Administrative Expenses (Class 1) and Priority Tax Claims (Classes 2(a) and (b)) are treated in accordance with Section 1129(a)(9) of the Bankruptcy Code unless otherwise agreed to by the claimant.  All other classes are unimpaired.

**3.02   Impairment Controversies.**   If a controversy arises as to whether any Claim or any class of Claims is impaired under this Plan, such class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Class or Claim under this Plan.

## ARTICLE IV

### ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

- 8

**4.01   Classes Entitled to Vote.** Each impaired Class of Claims shall be entitled to vote separately to accept or reject this Plan. Any unimpaired Class of Claims shall not be entitled to vote to accept or reject this Plan.

**4.02   Creditors Not Entitled to Vote.** Only Creditors holding Claims that are not contested may vote for the Plan unless authorized by the Court to do so after motion and court order entered prior to the Confirmation hearing unless Debtors stipulate to allow a Creditor temporary voting privileges.

**4.03   Class Acceptance Requirement.** A Class of Claims shall have accepted this Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such class that have voted on this Plan.

**4.04   One Vote Per Holder.** If a holder of a Claim holds more than one Claim in any one class, all Claims of such holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims voting on this Plan.

**4.05   Cramdown.** Notwithstanding the rejection or deemed rejection of this Plan by any class of Claims, Debtors shall request that the Bankruptcy Court confirm this Plan in accordance with Section 1129(b) of the Bankruptcy Code.

### ARTICLE V

### TREATMENT OF ADMINISTRATIVE EXPENSES AND CLASSES NOT IMPAIRED UNDER THE PLAN

**5.01   Class 1: Administrative Expenses.** The allowed amount of Administrative Expenses shall be paid:

(A)   On the later of: (1) the Effective Date; or (2) ten days after an Order approving the Administrative Expenses is entered if the Claim is one of a professional person

- 9 -

employed under Sections 327 or 1103 of the Bankruptcy Code or otherwise employed by the Bankruptcy; or (3) for all other Administrative Expenses, twenty days after the Claim becomes an Allowed Claim; or

(B)     Through such other treatment as may be agreed in writing by such holder of an Administrative Expense or as expressly set forth herein; provided, however, an Allowed Administrative Expense representing a liability incurred in the ordinary course of business shall be paid by Debtors upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto.

5.02     **Class 2; Priority Tax Claims**. Debtors will pay all Class 2 claims, to the extent any exist, in 5 years, in even annual cash payments, commencing one year after the Effective Date, a value, as of the Effective Date of the Plan, equal to the allowed amount of such claim consistent with 11 U.S.C. section 1129(a)(9)(C).

## ARTICLE VI

### TREATMENT OF CLASSES
### IMPAIRED UNDER THE PLAN

**6.01 Class    3A:     Secured    Claim    of    American    Home    Mortgage**

The Allowed amount of the Secured Claim of American Home Mortgage ("AHM") secured by the 30th Dr property as defined above in Class 3A shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of \$77,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as \$79,500. The

Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $79,500 , the monthly payment to the Claimant shall be in the amount of ($437.09) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to AHM left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if AHM elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest and no interest shall accrue on said claim. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. AHM shall retain all its liens and security interests in the 30th Dr Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein. In the event that the schedule of payments called for by the election is less than the present value of the Allowed Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall paid to the Secured Creditor with the final payment.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 30th Dr Property to AHM in full satisfaction of any and all Claims held by AHM against the Debtor or its principles.

**6.02 Class 3B:** **Secured** **Claim** **of** **American** **Home** **Mortgage**
The Allowed amount of the Secured Claim of American Home Mortgage ("AHM") secured by the Altadena property as defined above in Class 3B shall be determined by the Court

- 11

1 pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a
2 current section 506 valuation of $121,000. Nonetheless, in order to avoid a dispute over the
3 current value the Debtor proposes to treat the Allowed Secured Claim Amount as $123,500. The
4 Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the
5 Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an
6 Allowed Secured Claim Amount of $123,500 , the monthly payment to the Claimant shall be in
7 the amount of ($679.00) commencing the first day of the second month after the Effective Date.
8 There would be no prepayment penalties or additional loan fees.
9
10 To the extent there is any indebtedness owed to AHM left unpaid by this treatment, the
11 Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

12 Alternatively, if AHM elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead
13 have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on
14 a 360 month amortization without interest and no interest shall accrue on said claim. The
15 monthly payment to the Claimant shall commence the first day of the second month after the
16 Effective Date. AHM shall retain all its liens and security interests in the Altadena Property to
17 the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to
18 11 U.S.C. section 506 until the completion of the payments called for herein. In the event that the
19 schedule of payments called for by the election is less than the present value of the Allowed
20 Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall
21 paid to the Secured Creditor with the final payment.
22

23 At any time within four years of the Effective Date, the Debtor shall have the right to
24 surrender the Altadena Property to AHM in full satisfaction of any and all Claims held by AHM
25 against the Debtor or its principles.

- 12

**6.03 Class 3C: Secured Claim of American Home Mortgage**

The Allowed amount of the Secured Claim of American Home Mortgage ("AHM") secured by the Utopia property as defined above in Class 3C shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $95,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $97,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $97,500, the monthly payment to the Claimant shall be in the amount of ($536.05) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to AHM left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if AHM elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest and no interest shall accrue on said claim. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. AHM shall retain all its liens and security interests in the Utopia Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein. In the event that the schedule of payments called for by the election is less than the present value of the Allowed Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall paid to the Secured Creditor with the final payment.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Utopia Property to AHM in full satisfaction of any and all Claims held by AHM against the Debtor or its principles.

**6.04 <u>Class 3D</u>:    <u>Secured Claim of American Service Corporation</u>**

The Allowed amount of the Secured Claim of American Service Corporation ("ASC") secured by the 24th Lane property as defined above in Class 3D shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $95,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $97,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $97,500, the monthly payment to the Claimant shall be in the amount of ($536.05) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to ASC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if ASC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest and no interest shall accrue on said claim. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. ASC shall retain all its liens and security interests in the 24th Lane Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein. In the event that the

- 14

schedule of payments called for by the election is less than the present value of the Allowed Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall paid to the Secured Creditor with the final payment.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 24th Lane Property to ASC in full satisfaction of any and all Claims held by ASC against the Debtor or its principles.

### 6.05 Class 3E: Secured Claim of American Service Corporation

The Allowed amount of the Secured Claim of American Service Corporation ("ASC") secured by the Carribean property as defined above in Class 3E shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $86,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $88,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $88,500 , the monthly payment to the Claimant shall be in the amount of ($486.57) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to ASC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if ASC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest and no interest shall accrue on said claim. The monthly payment to the Claimant shall commence the first day of the second month after the

- 15

Effective Date. ASC shall retain all its liens and security interests in the Carribean Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein. In the event that the schedule of payments called for by the election is less than the present value of the Allowed Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall paid to the Secured Creditor with the final payment.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Carribean Property to ASC in full satisfaction of any and all Claims held by ASC against the Debtor or its principles.

**6.06 Class 3F: Secured Claim of American Service Corporation**

The Allowed amount of the Secured Claim of American Service Corporation ("ASC") secured by the Charleston property as defined above in Class 3F shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $75,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $77,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $77,500, the monthly payment to the Claimant shall be in the amount of ($426.09) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to ASC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

- 16

Alternatively, if NH elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest and no interest shall accrue on said claim. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. ASC shall retain all its liens and security interests in the Charleston Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein. In the event that the schedule of payments called for by the election is less than the present value of the Allowed Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall paid to the Secured Creditor with the final payment.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Charleston Property to ASC in full satisfaction of any and all Claims held by ASC against the Debtor or its principles.

**6.07 Class 3G: Secured Claim of American Service Corporation**

The Allowed amount of the Secured Claim of American Service Corporation ("ASC") secured by the Cinnabar property as defined above in Class 3G shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $55,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $57,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $57,500, the monthly payment to the Claimant shall be in the

- 17

amount of ($316.13) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to ASC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if NH elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest and no interest shall accrue on said claim. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. ASC shall retain all its liens and security interests in the Cinnabar Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein. In the event that the schedule of payments called for by the election is less than the present value of the Allowed Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall paid to the Secured Creditor with the final payment.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Cinnabar Property to ASC in full satisfaction of any and all Claims held by ASC against the Debtor or its principles.

**6.08 Class 3H:     Secured   Claim   of   American   Service   Corporation**

The Allowed amount of the Secured Claim of American Service Corporation ("ASC") secured by the Laurel property as defined above in Class 3H shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $99,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $101,500. The

- 18

1 Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the

2 Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an

3 Allowed Secured Claim Amount of $101,500, the monthly payment to the Claimant shall be in

4 the amount of ($558.05) commencing the first day of the second month after the Effective Date.

5 There would be no prepayment penalties or additional loan fees.

6 To the extent there is any indebtedness owed to ASC left unpaid by this treatment, the

7 Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

8

9 Alternatively, if ASC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead

10 have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on

11 a 360 month amortization without interest and no interest shall accrue on said claim. The

12 monthly payment to the Claimant shall commence the first day of the second month after the

13 Effective Date. ASC shall retain all its liens and security interests in the Laurel Property to the

14 extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11

15 U.S.C. section 506 until the completion of the payments called for herein. In the event that the

16 schedule of payments called for by the election is less than the present value of the Allowed

17 Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall

18 paid to the Secured Creditor with the final payment.

19 At any time within four years of the Effective Date, the Debtor shall have the right to

20 surrender the Laurel Property to ASC in full satisfaction of any and all Claims held by ASC

21 against the Debtor or its principles.

22

23 **6.09 Class 31: Secured Claim of American Service Corporation**

24 The Allowed amount of the Secured Claim of American Service Corporation ("ASC")

25 secured by the 2741 E. Sweetwater property as defined above in Class 31 shall be determined by

- 19

the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $105,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $107,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $107,500 , the monthly payment to the Claimant shall be in the amount of ($591.03) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to ASC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if ASC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest and no interest shall accrue on said claim. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. ASC shall retain all its liens and security interests in the 2741 E. Sweetwater Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein. In the event that the schedule of payments called for by the election is less than the present value of the Allowed Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall paid to the Secured Creditor with the final payment.

At any time within four years of the Effective Date. the Debtor shall have the right to surrender the 2741 E. Sweetwater Property to ASC in full satisfaction of any and all Claims held by ASC against the Debtor or its principles.

- 20

**6.10 Class 3J: Secured Claim of Bank of America**

The Allowed amount of the Secured Claim of Bank of American ("BofA") secured by the 65th Ave property as defined above in Class 3J shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $35,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $37,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $37,500 , the monthly payment to the Claimant shall be in the amount of ($206.17) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to BofA left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if BofA elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to. instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest and no interest shall accrue on said claim. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. BofA shall retain all its liens and security interests in the 65th Ave Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein. In the event that the schedule of payments called for by the election is less than the present value of the Allowed Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall paid to the Secured Creditor with the final payment.

- 21

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 65th Ave Property to BofA in full satisfaction of any and all Claims held by BofA against the Debtor or its principles.

**6.11 Class 3K: Secured Claim of Bank of America**

The Allowed amount of the Secured Claim of Bank of America ("BofA") secured by the 133rd St property as defined above in Class 3K shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $89,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $91,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $91,500 , the monthly payment to the Claimant shall be in the amount of ($503.07) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to BofA left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if BofA elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest and no interest shall accrue on said claim. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. BofA shall retain all its liens and security interests in the 133rd St Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein. In the event that the

- 22

schedule of payments called for by the election is less than the present value of the Allowed

Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall

paid to the Secured Creditor with the final payment.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 133rd St Property to BofA in full satisfaction of any and all Claims held by BofA against the Debtor or its principles.

**6.12 Class 3L: Secured Claim of Bank of America**

The Allowed amount of the Secured Claim of Bank of America ("BofA") secured by the Hidalgo property as defined above in Class 3L shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $55,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $57,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $57,500, the monthly payment to the Claimant shall be in the amount of ($316.13) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to BofA left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

Alternatively, if NH elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest and no interest shall accrue on said claim. The monthly payment to the Claimant shall commence the first day of the second month after the

- 23

Effective Date. BofA shall retain all its liens and security interests in the Hidalgo Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein. In the event that the schedule of payments called for by the election is less than the present value of the Allowed Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall paid to the Secured Creditor with the final payment.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Hidalgo Property to BofA in full satisfaction of any and all Claims held by BofA against the Debtor or its principles.

**6.13 Class 3M: Secured Claim of EMC Mortgage Corporation**

The Allowed amount of the Secured Claim of EMC Mortgage Corporation ("EMC") secured by the Campbell property as defined above in Class 3M shall be determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $49,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $51,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $51,500, the monthly payment to the Claimant shall be in the amount of ($283.15) commencing the first day of the second month after the Effective Date. There would be no prepayment penalties or additional loan fees.

To the extent there is any indebtedness owed to EMC left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

- 24

Alternatively, if EMC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to. instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 360 month amortization without interest and no interest shall accrue on said claim. The monthly payment to the Claimant shall commence the first day of the second month after the Effective Date. EMC shall retain all its liens and security interests in the Campbell Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein. In the event that the schedule of payments called for by the election is less than the present value of the Allowed Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall paid to the Secured Creditor with the final payment.

At any time within four years of the Effective Date, the Debtor shall have the right to surrender the Campbell Property to EMC in full satisfaction of any and all Claims held by EMC against the Debtor or its principles.

**6.14 Class 3N: Secured Claim of GMAC/Homecomings Financial**

The Allowed amount of the Secured Claim of GMAC/Homecomings ("GMAC/HF") secured by the 39th Ave property as defined above in Class 3N as determined by the Court pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a current section 506 valuation of $55,000. Nonetheless, in order to avoid a dispute over the current value the Debtor proposes to treat the Allowed Secured Claim Amount as $57,500. The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an Allowed Secured Claim Amount of $57,500, the monthly payment to the Claimant shall be in the

- 25

1  amount of ($316.13) commencing the first day of the second month after the Effective Date.

2  There would be no prepayment penalties or additional loan fees.

3      To the extent there is any indebtedness owed to GMAC/HF left unpaid by this treatment,

4  the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

5      Alternatively, if GMAC/HF elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to,

6  instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly

7  based on a 360 month amortization without interest and no interest shall accrue on said claim.

8  The monthly payment to the Claimant shall commence the first day of the second month after the

9  Effective Date. GMAC/HF shall retain all its liens and security interests in the 39th Ave Property

10  to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant

11  to 11 U.S.C. section 506 until the completion of the payments called for herein. In the event that

12  the schedule of payments called for by the election is less than the present value of the Allowed

13  Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall

14  paid to the Secured Creditor with the final payment.

15

16      At any time within four years of the Effective Date, the Debtor shall have the right to

17  surrender the 39th Ave Property to GMAC/HF in full satisfaction of any and all Claims held by

18  GMAC/HF against the Debtor or its principles.

19      **6.15 Class   3O:       Secured   Claim   of   Washington   Mutual**

20      The Allowed amount of the Secured Claim of Washington Mutual Bank ("WAMU")

21  secured by the 28th Dr property as defined above in Class 3O shall be determined by the Court

22  pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a

23  current section 506 valuation of $30,000. Nonetheless, in order to avoid a dispute over the

24  current value the Debtor proposes to treat the Allowed Secured Claim Amount as $32,500. The

25

- 26

1  Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization of the

2  Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based on an

3  Allowed Secured Claim Amount of $32,500 , the monthly payment to the Claimant shall be in

4  the amount of ($178.68) commencing the first day of the second month after the Effective Date.

5  There would be no prepayment penalties or additional loan fees.

6

7        To the extent there is any indebtedness owed to WAMU left unpaid by this treatment, the

8  Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

9        Alternatively, if WAMU elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead

10  have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on

11  a 360 month amortization without interest and no interest shall accrue on said claim.   The

12  monthly payment to the Claimant shall commence the first day of the second month after the

13  Effective Date.  WAMU shall retain all its liens and security interests in the 28th Dr Property to

14  the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to

15  11 U.S.C. section 506 until the completion of the payments called for herein. In the event that the

16  schedule of payments called for by the election is less than the present value of the Allowed

17  Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall

18  paid to the Secured Creditor with the final payment.

19        At any time within four years of the Effective Date, the Debtor shall have the right to

20  surrender the 28th Dr Property to WAMU in full satisfaction of any and all Claims held by

21  WAMU against the Debtor or its principles.

22

23        **6.16 Class    3P:        Secured     Claim     of     Washington     Mutual     Bank**

24        The Allowed amount of the Secured Claim of Washington Mutual Bank ("WAMU")

25  secured by the LeMarche property as defined above in Class 3P as determined by the Court

1  pursuant to 11 U.S.C. section 506. The Debtor's updated valuation of the property establishes a
2  current section 506 valuation of $110,000. Nonetheless, in order to avoid a dispute over the
3  current value the Debtor proposes to treat the Allowed Secured Claim Amount as $112,500-.
4  The Allowed Secured Claim Amount shall be paid monthly based on a 360 month amortization
5  of the Allowed Secured Claim Amount at Fixed 5.25% per annum interest. For example, based
6  on an Allowed Secured Claim Amount of $112,500 , the monthly payment to the Claimant shall
7  be in the amount of ($618.52) commencing the first day of the second month after the Effective
8  Date. There would be no prepayment penalties or additional loan fees.
9
10      To the extent there is any indebtedness owed to WAMU left unpaid by this treatment, the
11  Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.

12      Alternatively, if WAMU elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to. instead
13  have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on
14  a 360 month amortization without interest and no interest shall accrue on said claim. The
15  monthly payment to the Claimant shall commence the first day of the second month after the
16  Effective Date. WAMU shall retain all its liens and security interests in the LeMarche Property
17  to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant
18  to 11 U.S.C. section 506 until the completion of the payments called for herein. In the event that
19  the schedule of payments called for by the election is less than the present value of the Allowed
20  Secured Claim within the meaning of 11 U.S.C. section 1129(b)(2)(i)(A)(II) any difference shall
21  paid to the Secured Creditor with the final payment.
22

23      At any time within four years of the Effective Date, the Debtor shall have the right to
24  surrender the LeMarche Property to WAMU in full satisfaction of any and all Claims held by
25  WAMU against the Debtor or its principles.

- 28

**6.17 <u>Class 3Q: Secured Claim of Maricopa County Treasurer</u>**

The Allowed amount of the Secured Claim of Maricopa County Treasurer ("Maricopa County") secured by the real property defined above in Class 3Q. Maricopa County shall retain all its liens and security interests in the subject real properties of the Debtor to the extent it holds an Allowed Secured Claim until the completion of the payments called for herein. Maricopa County's Allowed Secured Claim shall be paid in five even annual installments commencing one year after the Effective Date and this Allowed Secured Claim shall accrue interest at the statutory rate prescribed by Arizona law.

**6.18 <u>Additional Treatment Applicable To Secured Classess 3A through 3P</u>**

This section is applicable to all Secured Classes 3A through 3P described above. No due on sale clause or pre payment penalty shall apply or be enforceable. Regardless of any sale however, Secured Classes 3A through 3P retain all their liens and security interests in the applicable property to the extent they hold an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. section 506 until the completion of the payments called for herein.

Furthermore, all Secured Classes 3A through 3P shall send to the Reorganized Debtor a mortgage statement every 30 days prior to the date of each payment called for by the Plan that includes all necessary contact and payment information including but not exhausted by the Creditor's mailing address for payments, account number assigned by the Creditor, and the monthly payment amount including any additional sums being impounded such as for real property taxes or insurance.

**6.19    Class 4: Claims of Unsecured Deficiency Creditors.**  The Allowed Claims of the Class 4 Claims of Unsecured Deficiency Creditors will be treated identically as Class 5 General Unsecured Creditors.

**6.20    Class 5: Claims of General Unsecured Creditors.**  The Allowed Claims of the General Insider Unsecured Creditors shall be treated as follows:

90 days after the Effective Date, all the Allowed Unsecured Creditors (Classes 4 and 5) shall be paid on a pro rata basis with all other Allowed Unsecured Creditors (Classes 4 and 5) shall be paid $45,000 from the proceeds of the Cash Pool.  3 months later all the Allowed Unsecured Creditors (Classes 4 and 5) shall be paid on a pro rata basis from any remaining proceeds left in the Cash Pool.

**6.21    Class 7: Interests Of Equity Security Holders.**  The Allowed Equity Security Interests of the Equity Security Holders in the Debtor shall be retained and continue in the Reorganized Debtor.

**6.22    Treatment Applying To All Classes; Release Of Claim By All Creditors Of The Debtor Against The Members Of The Debtor And Their Affiliates.**  As partial consideration for the treatment received by the Creditors under the Plan, all claims held any Creditor of the Debtor against the Debtor or the Debtor's Affiliates are hereby released upon the Effective Date of the Plan.

**6.23    Treatment Applying To All Classes; Release Of Claims By The Debtor Against Creditors And Their Affiliates.**  To the extent the Debtor loses tenants as a result of actions taken by lenders or lenders affiliates, including contacting tenants and demanding that the tenants move out immediately, actions these action post-petition may have been in violation of the automatic stay and constitute tortuous interference with contract (which would apply both pre and post-petition) for which the Debtor could sue the offending lender/Creditor.  Any claims held by the Debtor against

- 30 -

such a Creditor or the Creditor's affiliates arising prior to the filing of this Plan shall be released upon the Effective Date of the Plan as to those classes that voted for the Plan.

# ARTICLE VII

# IMPLEMENTATION OF THE PLAN

**7.01** **Procedure To Implement The Plan**. On the date of Plan Confirmation, or prior to where applicable, the following events shall occur:

The Debtor shall:

a. Determine the amounts of all allowed Class claims.

b. Execute any documents necessary to implement Plan.

c. Debtors shall file with the Court post-confirmation quarterly reports, and provide a copy of the same to the United States Trustee, as required by the United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 Cases until a final decree is obtained in this case. The Debtors shall pay any post-confirmation quarterly fees as required by the United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 Cases until a final decree is obtained in this case.

d. Appoint a Disbursing Agent.

e. The Debtor shall assemble the Cash Pool which shall include a $45,000 contribution from the member(s) of the Debtor and any remaining proceeds from the Debtor-In-Possession bank account as of the Effective Date. The Cash Pool shall be disbursed by the Disbursing Agent to Allowed Unsecured Creditors in amount of no less than $45,000, and also used for operating

expenses pursuant to the terms of the Plan including without limitation the payment of real property taxes. Alternatively, to the extent that the member(s) have provided debtor-in-possession financing to the estate then such debt shall be released dollar for dollar in lieu of payment of additional funds by them in to the Cash Pool. The cancellation of the DIP financing debt or the payment of the foregoing proceeds by the member(s) of the Debtor shall be contributed as new value to the estate.

f. The Debtor shall grant its members, affiliates and principles a release of all claims in existence as of the Petition Date in return for the funding of the Cash Pool.

g. The Debtor shall going forward, as needed to comply with the distribution requirements of the Plan, assemble the Cash Pool from the member(s), to be disbursed by the Disbursing Agent to Allowed Unsecured Creditors pursuant to the terms of the Plan.

**7.02 The Reorganized Debtor Shall Serve As The Disbursing Agent**. The Debtor shall become the Disbursing Agent on the day after the Effective Date to serve as Disbursing Agent for all payments to be made to the Classes under the Plan.

a. **Duties of The Disbursing Agent**. The Disbursing Agent shall receive, disburse and account to the Court, the Creditors, Equity Security Holders and other parties in interest for the assets, and shall be responsible for reviewing and approving all claims (all disputes to be resolved by the Court), keep adequate records of all transactions, receipts and disbursements, communicating with, and advising all Creditors, Debtors and other parties in interest as needed, and such other duties as may be consistent with the responsibilities of a Disbursing Agent.

- 32

Additionally, the Disbursing Agent shall be responsible for liquidating all non-exempt estate assets set forth in Appendix B, Liquidation Analysis, attached hereto to be distributed to General Non-Insider Unsecured Creditors pursuant to the Plan including but not exhausted by bringing actions against third parties on behalf of the Debtors. The Disbursing Agent shall also have the right to object to the allowance of any Claim on behalf of the Debtors. These actions may necessitate use of legal services and incurring legal expenses.

The Disbursing Agent on behalf of the Reorganized Debtors shall file with the Court post-confirmation quarterly reports, and provide a copy of the same to the United States Trustee, as required by the United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 Cases until a final decree is obtained in this case. The Disbursing Agent on behalf of the Reorganized Debtors shall pay any post-confirmation quarterly fees as required by the United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 Cases until a final decree is obtained in this case. The Disbursing Agent shall acknowledge and assume these duties, and all other obligations of Disbursing Agent set forth herein, by its execution of an acceptance on the notice of the appointment of the Disbursing Agent to be filed with Court pursuant to Section 7.02 of the Plan.

      **b.**    **Termination of Disbursing Agents' Duties:** The final distribution of the remaining pre-petition assets of the Reorganized Debtors pursuant to the terms of the Plan set forth herein shall discharge the Disbursing Agent.

      **c.**    **Compensation of Disbursing Agent.** The Disbursing Agent shall not receive any compensation other than the reimbursement of any actual out of pocket costs incurred by the Disbursing Agent in performing the duties authorized by this Plan which may include legal fees and expenses.

**7.03    Effectuating Documents.** On or before the Effective Date, the Reorganized Debtor shall file with the Bankruptcy Court such agreements, indentures, instruments and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**7.04    Property Vests In The Reorganized Debtor** . All Property, assets and rights of the estate of the Debtor shall vest in the Reorganized Debtor, free and clear of all liens, Claims and encumbrances of any kind whatsoever unless expressly provided for under this Plan. The Reorganized Debtor shall be able to manage their affairs, subject only to the limitations set forth in this Plan, without the requirement of further orders from the Bankruptcy Court.

**7.05    Minimum Distributions.** The distributions to holders of Claims pursuant to the Plan are minimum distributions only, and the Reorganized Debtor shall have the right and discretion, at all times, to make full or partial prepayments without penalty to holders of Claims.

**7.06    Unclaimed Monies.** All distribution of money under the Plan which are returned by the Post Office undelivered or which cannot be delivered due to lack of a current address will be retained by the Disbursing Agent, in trust, in a federally insured bank for the distributee; after the expiration of six months from the date of the first attempted distribution, the unclaimed monies, stock, and all future distributions will be redistributed pro rata to the other distributees, free of any Claim by the distributee.

**7.07    Void Nature Of Any Post-Petition Trustee's Sales Or Foreclosures.** Any trustee's sales or other forms of foreclosure of the Debtor's real property undertaken after the Petition Date in violation of the 11 U.S.C. section 362 are hereby deemed void. Any Creditor, Creditor's affiliate or agent, or other party, who purported to undertake such a trustee's sale or foreclosure of the Debtor's real property shall use best efforts to correct and document the void

- 34

nature of their act(s) and document and correct any public record of such a void trustee's sale or foreclosure. The remedy for enforcing this provision expressly includes, but is not exhausted by, that of specific performance and injunction without the need for a bond by the Debtor.

**7.08** **Binding To Debtor And Creditors**. Upon the entry of the Confirmation Order, this Plan shall bind the Debtor now known as the Reorganized Debtor, Equity Security Holders of the Debtor, any entity acquiring or being distributed any property under this Plan, any Creditor, whether or not their Claims and interests are impaired under this Plan and whether or not they have accepted this Plan.

## ARTICLE VIII

## CONDITIONS OF CONFIRMATION

**8.01** **Conditions To Confirmation Of The Plan**. It shall be a condition precedent to the Confirmation of this Plan that the Final Order provide for:

    **(a)**    Confirmation of this Plan;

    **(b)**    To supplement the injunctive provisions of § 524 of the Bankruptcy Code, except as provided in this Plan or the Confirmation Order, as of the Confirmation Date, all persons or entities and governmental units shall be stayed, restrained and enjoined from taking any of the following actions on account of any such discharge Claims, debts or liabilities: (i) commencing or continuing in any manner any action or other proceeding against the Reorganized Debtor, or its property; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting or recovering in any manner any judgment, award, decree or order against the Reorganized Debtor, or its property; (iii) creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against the Reorganized Debtor, or any of its property, or any

- 35

direct or indirect transferee of any property of, or any direct or indirect successor in interest to, or any property of such transferee or successor; (iv) setting-off, seeking reimbursement of, contribution from, subrogation against or otherwise recouping in any manner directly or indirectly, any amount owed to the Reorganized Debtor, or any direct or indirect transferee of any property of, or any successor in interest to the Reorganized Debtor, commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.

Pursuant to the Plan, none of the Debtor, the Plan Sponsors, Official Committees, or any of their respective present or former partners, members, officers, directors, employees, advisors, attorneys or agents (collective, the **"Released Parties"**) shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns for any act or omission in connection with, relating to or arising out of the Chapter 11 case, any settlement related to the Chapter 11 case, the negotiation and execution of a proposed Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or of the Plan, issuance and distribution of any securities issued or to be issued pursuant to the Plan, or the property to be distributed under the Plan, except only to the extent that liability is based on willful misconduct. The Released Parties shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan, or in the context of the Bankruptcy Case.

(e)     Acceptance or rejection of this Plan was solicited in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and no Person conducting or participating in solicitation, including Debtors, shall be liable, on account of such solicitation or

participation, for violation of any applicable law, rule, or regulation government solicitation of acceptance or rejection of a plan of reorganization.

## ARTICLE IX

### GENERAL PROCEDURES FOR OBJECTING TO CLAIMS AND RESOLVING AND TREATING CONTESTED AND CONTINGENT CLAIMS

**9.01 Claim Objection Deadline.** Unless another date is established by the Bankruptcy Court, all objections to Claims shall be filed with the Clerk of the Bankruptcy Court and served on the holders of such Claims (unless earlier filed) by the later of 90 days after the Effective Date or the date that is sixty (90) days after a particular proof of Claim (or a request for payment in the case of Administrative Claim) has been filed. If an objection has not been filed to a Claim by the deadlines established herein, the Claim shall be treated as an Allowed Claim; provided, however, that no objection shall be required if a Claim was not listed on the Schedules or was listed on the Schedules as disputed, contingent or unliquidated, or was not evidenced by a timely filed proof of Claim. No such unlisted, disputed, contingent, unliquidated or unfiled Claim shall be treated as an Allowed Claim, except pursuant to a Final Order so providing. The objection deadlines established herein shall not apply to Claims and causes of action that must be asserted through an adversary proceeding.

**9.02 Preservation Of Objections To Claims.** Except as otherwise provided in this Plan or in the Confirmation Order or other Final Order, no compromise, waiver or release of Claims, demands or causes of action, that may be provided for in this Plan or in any Final Order of the Court shall, in any way, limit or impair the right of the Reorganized Debtor to prosecute objections to

- 37

Claims, and the Reorganized Debtor hereby retain all objections to the allowability of a Claim and all defenses associated with such objections.

**9.03 No Distributions Pending Resolution Of Objections.** Notwithstanding any other provision of this Plan, no distributions shall be made with respect to a contested Claim (or any contested portion of a Claim, if such Claim is not severable) by the Reorganized Debtor unless and until all objections to such contested Claim have been determined by Final Order.

**9.04 Interest On Contested Claims And Contingent Claims.** No interest shall accrue on a contested Claim during the period from the Effective Date until the date on which the Claim is allowed, if ever, and no interest shall accrue on a contingent Claim during the period from the Effective Date until the date on which the Claim becomes fixed and absolute or is otherwise allowed, if ever; provided that a contested Claim or a contingent Claim that is specifically entitled to post-confirmation interest by the terms of this Plan, and that is ultimately allowed, shall accrue post-confirmation interest from the Effective Date.

**9.05 Treatment Of Contingent Claims.** Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed and absolute or is disallowed, such Claim shall be treated as a contested Claim for all purposes related to the distributions under this Plan; provided, however, that the distribution entitlements shall arise only from the date on which a contingent Claim becomes fixed and absolute or is otherwise allowed.

**9.06 Disallowance Of Post-Petition Additions.** The Reorganized Debtor shall not be required to make specific objection to proofs of Claim that allege a right to recover post-petition interest, penalties, fees, and other accruals with respect to pre-petition Claims (except Secured Claims entitled to such accruals pursuant to § 506(b) of the Bankruptcy Code), and any Claim

- 38 -

amounts attributable to such post-petition interest, penalties, fees and other accruals shall be disallowed in full upon entry of the Confirmation Order.

9.07 **Settlement Of Disputed Claims**. The Reorganized Debtors shall be authorized to settle, without Court approval, any disputed Claims with a settlement amount that does not exceed five thousand dollars ($5,000).

9.08 **Preservation Of Debtor's Claims, Demands And Causes Of Action**. All claims, demands and causes of action held by, through or on behalf of the Debtors, against any other person or entity, are hereby preserved in full, unless otherwise provided by this Plan; and no provision of this Plan shall impair the rights of the Reorganized Debtor with respect to any of such claims, demands and causes of action to prosecute and defend against any such preserved claims, demands and causes of action.

## ARTICLE X

## GENERAL PROVISIONS

10.01 **Post-Confirmation Operating Of The Automatic Stay**. Any lawsuits pending in any court (other than the Bankruptcy Court) that seek to establish Debtors' liability on pre-petition Claims and that are stayed pursuant to § 362 of the Bankruptcy Code, shall be dismissed as of the Effective Date unless the Reorganized Debtor elect to have their liability determined by such other courts. Any pending motions to lift or vacate the automatic stay shall be deemed denied as of the Effective Date and the stay shall remain in effect. Any such pre-petition Claims shall be determined as provided in this Plan.

10.02 **Prohibition Against Discriminating Treatment Against The Reorganized Debtor**. No individual, entity or government may discriminate against the Reorganized Debtor

- 39

solely because of the commencement, continuation or termination of this Chapter 11 proceeding, or because of any provision of this Plan, or the legal effect of this Plan, and the Confirmation Order shall constitute an express injunction against such discriminating treatment.

**10.03 Compliance With Tax Requirements**. In connection with this Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities.

**10.04 Insurance**. The Reorganized Debtor shall use its best efforts to maintain insurance on any non-exempt pre-petition property they retain pending completion of distributions to Creditors.

**10.05 Termination Of Adequate Protection Payments**. Upon the entry of a Confirmation Order by the Court, any and all payments to Secured Creditors for adequate protection shall be terminated.

**10.06 No Additional Charges**. Except as expressly stated in this Plan, or as allowed by Court order, no interest, penalty, late charge or additional charges (such as attorneys' fees) shall be allowed on any Claim subsequent to the Filing Date.

**10.07 Deficiency Claims**. Unsecured Creditors whose Claims arise out of a deficiency resulting from the abandonment of Collateral to a previously Secured Creditor or resulting from orders granting relief from the provisions of § 362 of the Bankruptcy Code, must file their Claims within thirty (30) days after Confirmation of this Plan unless the Court enters an Order making an 11 U.S.C. section 506 determination of secured status as to the subject Unsecured Creditor prior to Confirmation in which case said Unsecured Creditor must filed its Claim within thirty (30) days after the entry of said Order.

10.08 **Barring Of Claims**. The entry of the Confirmation Order shall permanently bar the filing and asserting of any Claims against the Debtors which arose or relate to the period of time prior to the Confirmation Date, which were listed by the Debtors in its Schedules and Statement Of Financial Affairs (as amended) filed with the Court or were not evidenced by timely and proper proofs of Claim filed with the Court.

10.09 **Amount Of Claims**. All references to Claims and amount of the Claims refer to the amount of the Claims as allowed by the Court. The Debtors reserve the right, both before and within sixty days after the Effective Date, to object to Claims so as to have the Court determine the amount allowed to be paid under this Plan.

10.10 **Remedies To Cure Defects**. After Confirmation, the Reorganized Debtor may, with the approval of the Court, and so long as it does not materially and/or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in this Plan, or in the Confirmation of this Plan, in such a manner as may be necessary to carry out the purposes and the intent of this Plan.

10.11 **Retention Of Jurisdiction**. After the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 cases for the following purpose:

    (a)    To determine any and all objections to the allowance of Claims;

    (b)    To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or this Plan;

    (c)    To determine any applications for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the

Debtor may be liable, and to hear and determine, and if need be, to liquidate any and all Claims arising therefrom;

    (d)    To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date;

    (e)    To consider any modifications of this Plan, remedy and defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

    (f)    To determine any and all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan or any person's or entity's obligations thereunder;

    (g)    To determine all controversies, suits and disputes arising as a result of a demand by any utility for a deposit or other form of security as a condition to providing post-confirmation utility services to the Debtor;

    (h)    To determine all controversies, suits and disputes of this Plan as a result of discriminatory treatment of the Debtor;

    (i)    To hear and determine any Claim or cause of action by or against the Debtor, and to consider and act on the compromise and settlement of any Claim or cause of action by or against the Debtor;

    (j)    To issue such orders in aid of execution of this Plan, as are authorized by § 1142 of the Bankruptcy Code; and

    (k)    To determine such other matters as may be set forth in the Confirmation Order or as may arise in connection with this Plan or the Confirmation Order.

-42

**10.12 Modification Of Plan.** Modifications of this Plan may be proposed in writing by Debtor at any time before Confirmation, provided that this Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, and Debtor shall have complied with § 1125 of the Bankruptcy Code. This Plan may be modified at any time after Confirmation and before its substantial consummation, provided that this Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and hearing, confirms this Plan, as modified, under § 1129 of the Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

**10.13 Severability.** Wherever possible, each provision of this Plan shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Plan shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Plan. Furthermore, if the Bankruptcy Court will not confirm this Plan because one or more provisions hereof are determined to be prohibited or invalid under applicable law, Debtor may seek permission of the Bankruptcy Court to amend this Plan by deleting the offending provision.

**10.14 Revocation Of Plan.** Debtor reserves the right to revoke and/or withdraw this Plan prior to entry of the Confirmation Order. If the Debtor revokes and/or withdraws this Plan, or if Confirmation of this Plan does not occur, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the

1  Debtor or any other person or entity or to prejudice in any manner the rights of the Debtor or any

2  person or entity in any further proceeding involving the Debtor.

3  ## ARTICLE XI

4  ## DISCHARGE OF DEBTOR

5  **11.01  Discharge Of The Debtors** . Except as otherwise provided in this Plan or in the

6  Confirmation Order, the rights afforded under this Plan and the treatment of Claims under this Plan

7  shall be in exchange for and in complete satisfaction, discharge and release of all Claims including

8  any interest or Claims from the petition date.  Confirmation of this Plan shall discharge the Debtor

9  from all Claims or other debts, liabilities or obligations of any kind or nature, that arose, in whole or

10  part, before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h) or 502(i) of

11  the Bankruptcy Code, whether or not a proof of Claim based on such debt is timely filed or deemed

12  filed pursuant to § 501 of the Bankruptcy Code, a Claim based on such debt is allowed pursuant to

13  § 502 of the Bankruptcy Code, or the holder of a Claim based on such debt has accepted this Plan.

14  **11.02  Effect Of Discharge On Other Entities**. Pursuant to § 524(e) of the Bankruptcy

15  Code, except as otherwise provided in this Plan, the discharge of a debt of the Debtors, pursuant to

16  this Plan, shall not affect the liability of any other entity on, or the Property of any other entity for,

17  such debt.

18  **11.03  Modification Of Plan Due To Default**. If any Creditor holding an Allowed Claim

19  seeks such an Order, the Debtor may seek modification of the Plan prior to entry of the Order

20  based upon good cause for the default and reasonableness of the modification.

21  ## ARTICLE XII

22  ## TREATMENT OF EXECUTORY CONTRACTS
   ## AND UNEXPIRED LEASES

- 44

**12.01 Description of Executory Contracts.** The Debtor has no executory contracts in the capacity as a lessee. The Debtor does rent its residential real properties to tenants in a capacity as a lessor. Attached hereto as Exhibit 1 is a current list of these executory contracts. Additional terms of these leases are set forth in the Debtor's Schedule G. The Debtor shall assume these executory contracts listed therein.

**12.02 Rejected If Not Assumed.** Except for month to month contracts, all contracts and leases of Debtor that constitute executory contracts or unexpired leases as of the date of filing the Chapter 11 petition for relief shall be rejected as of the Effective Date, except for the leases set forth or described in Section 12.01.

**12.03 Disputes As To Executory/Unexpired Status.** Notwithstanding § 12.02 above, if on the Effective Date there is a pending dispute as to whether a contract is executory or a lease is unexpired, Debtor's right to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.

**12.04 Expired Contracts Or Leases.** Any contract or lease that expired pursuant to its terms prior to the Effective Date, and that has not been assumed or rejected by Final Order prior to the Effective Date, is hereby specifically rejected.

**12.05 Bar To Rejection Damages.** If the rejection or an executory contract or unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors as follows: (a) if the Claim arises from the rejection of an executory contract or unexpired lease by operation of any provision of this Plan, thirty (30) days after the date of service of notice of

-45-

the Effective Date; (b) if the Claim arises from the rejection of an executory contract or unexpired lease pursuant to a Final Order of the Bankruptcy Court (other than the Confirmation Order) authorizing rejection of such contract or lease, thirty (30) days after service of notice of the entry of such Final Order; or (c) if the Claim arises from the rejection of an executory contract or unexpired lease that is rejected after withdrawal of the assumption thereof, thirty (30) days after service of notice of the assumption withdrawal. The foregoing applies only to Claims arising from the rejection of an executory contract or unexpired lease; any other Claims held by a party to a rejected contract or lease shall have been evidenced by a proof of Claim filed by earlier applicable bar dates or shall be barred and unenforceable.

12.06 **Cure Of Defaults Upon Assumption**. Upon the assumption of any executory contract or unexpired lease (including an executory contract or unexpired lease deemed to be such by assumption herein) including, without limitation, defaults by the Debtor specified in § 365(b)(10) of the Bankruptcy Code and any defaults by the Debtor specified in § 365(b)(2) of the Bankruptcy Code, shall be deemed cured except to the extent written demand for the cure of or demonstration of ability to cure any default has been filed with the Bankruptcy Court and served upon Debtor by the non-Debtor party to such executory contract or unexpired lease within thirty (30) days after the date of service of notice of the Effective Date. In the absence of a timely demand in accordance with the foregoing, Debtor's obligation to cure or demonstrate the ability to cure shall be deemed waived, released and discharged. If any non-Debtor party to such executory contract or unexpired lease timely serves and files such written demand, and Debtor files an objection in writing to such demand within thirty (30) days thereafter, the Bankruptcy Court shall, by the issuance of a Final Order, determine the amount actually due and owing in respect of such demand or shall approve the settlement of such demand. Debtor shall have thirty (30) days thereafter in which to effect such

-46-

cure or withdraw ab initio their assumption of such executory contract or unexpired lease

whereupon such executory contract or unexpired lease shall be deemed to have been rejected as of

the date of the Chapter 11 petition for relief.

**12.07  Treatment of Claims Arising From Assumption Or Rejection.** All Allowed

Claims arising from the assumption of an executory contract or unexpired lease shall be treated as a

General Unsecured Claim unless otherwise ordered by Final Order of the Bankruptcy Court. No

such Claims are anticipated in this case. In the event no General Unsecured Class exists, but one is

needed, the Debtor will create one with a modification.

DATED this 1st day of March, 2010.

/s/ 015079
Mark J. Giunta
Law Office of Mark J. Giunta
845 North Third Ave.
Phoenix, Arizona 85003-
1408

Approved by Debtors:

/s/ Donald Park
In his capacity as authorized representative of Park
Holdings. LLC the controlling member of the Debtor.

A COPY of the foregoing was
Electronically filed with the Clerk of the
U.S. Bankruptcy Court
This 1st day of March, 2010.

Copy of the foregoing mailed/faxed/emailed
This 1st day of March, 2010 to:

- 47

1    Barbara Lee Caldwell * blc@ashrlaw.com
     Aiken Schenk Hawkins & Ricciardi, P.C.
2    4742 North 24th Street, Suite 100
     Phoenix, Arizona 85016-4859
3    Counsel for Maricopa County

4    Brice, Vander Linden & Wernick, P.C.
5    American Home Mortgage Servicing, Inc
     1525 S. Beltline Road, Suite 100 N
6    Coppell, Texas 75019

7    Josephine E. Piranio
     PITE DUNCAN, LLP
8    4375 Jutland Drive, Suite 200
     P.O. Box 17933
9    San Diego, CA 92177-0933
     Email: jsalmon@piteduncan.com
10

11   Kevin Hahn, #024277
     MALCOLM CISNEROS, A Law Corporation
12   2112 Business Center Drive
     Second Floor
13   Irvine, California 92612
     Email: kevin@mclaw.org
14

15   Mark S. Bosco
     Tiffany & Bosco P.A.
     2525 EAST CAMELBACK ROAD
16   SUITE 300
     PHOENIX, ARIZONA 85016
17   Email: ccf@tblaw.com
18

     Edward K. Bernatavius *edward.k.bernatavicius@usdoj.gov
19   U.S. Trustee's Office
     230 N. First Ave., Ste. 204
20   Phoenix, AZ 85003-1706

21   Elizabeth A. Van Aalsburg

22

23

24

25

- 48

## APPENDIX A

### DEFINITIONS

**Defined Terms**. For purposes of this Plan, the capitalized terms used in this Plan shall have the meanings as set forth below:

**1.01**    **Administrative Claims/Expenses**. Claims and expenses which are allowed pursuant to § 503(b) of the Bankruptcy Code and which are entitled to priority pursuant to § 507(a)(1) of the Bankruptcy Code.

**1.02**    **Affiliate**. This term includes any entity (including persons) that directly or indirectly own, control, or hold with power to vote, 20 percent or more of the outstanding voting securities of the debtor. Park Holdings, LLC, Donald W. Park and Michelle M. Park Living Trust U/T/A dated August 17, 2001, and Donald W. Park and Michelle M Park are all Affiliates of Mendocino Realty, LLC, the Debtor in this Bankruptcy Case.

**1.03**    **Allowed Claim**. A Claim (a) with respect to which a Proof of Claim has been filed with the Court within the applicable period of limitation fixed by the Federal Rules Of Bankruptcy Procedure, Rule 3003, or (b) scheduled in the list of Creditors prepared and filed with the Court pursuant to Federal Rules Of Bankruptcy Procedure, Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and in either case, as to which no objection to the allowance thereof has been filed within any applicable period of limitation fixed by Federal Rules Of Bankruptcy Procedure, Rule 3007, the Plan, an order of the Court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal and as to which no appeal is pending. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise provided hereafter in the Plan.

**1.04**    **Allowed Secured Claim**. This term refers to and means a Claim that is both an Allowed Claim and a Secured Claim.

**1.05**    **Allowed Unsecured Claim**. This term refers to and means a Claim that is both an Allowed Claim and an Unsecured Claim.

**1.06**    **Ballot**. This term refers to and means the ballot for accepting or rejecting the Plan which will be distributed to holders of Claims in Classes that are impaired under this Plan and are entitled to vote on this Plan.

**1.07 Bankruptcy Code**. The Bankruptcy Code is the Bankruptcy Reform Act Of 1978, sometimes referred to as the Bankruptcy Code Of 1978, as contained in Title 11 U.S.C.A. § 101, et seq., and all amendments thereto.

**1.08 Bankruptcy Court or Court**. This term refers to and means the United States Bankruptcy Court for the District of Arizona, Phoenix Division, or any other court that exercises jurisdiction over all or part of the Bankruptcy Cases, including the United States District Court for the District of Arizona to the extent that the reference of all or part of the Bankruptcy Cases is withdrawn.

**1.09 Bankruptcy Rules**. This term refers to and means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075 and the local rules of Court, as applicable during the term of the Bankruptcy Cases.

**1.10 Bankruptcy Case**. This term refers to and means the Chapter 11 case filed by Mendocino Realty, LLC, Case No. 2:09-bk-27737-PHX-RJH.

**1.11 Bar Date**. The last day the Court will allow a Proof of Claim to be filed in this bankruptcy proceeding. The Bar Date is usually the date set for the hearing on approval of the Disclosure Statement and notice of the Bar Date will accompany the notice setting the hearing on approval of the Disclosure Statement, unless another deadline has been set by the Court.

**1.12 Business Day**. This term refers to and means every day except Saturdays, Sundays, and holidays observed by the Bankruptcy Court.

**1.13 Cash Collateral** Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in § 552(b) of the Bankruptcy Code, whether existing before or after the commencement of a case under Title 11 of the Bankruptcy Code.

**1.14 Chapter 11**. Chapter 11 of the Bankruptcy Code. Reference to section numbers are references to sections in the Bankruptcy Code 11 U.S.C. § 101, et seq., Public Law 95-598, effective October 1, 1979, as amended, unless otherwise specified.

**1.15 Claim**. A right to (1) payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured or unsecured; or (2) an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

     **1.16** **Class**. One or more creditors grouped together as defined herein. The Plan is intended to deal with all Claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to § 502(a) of the Bankruptcy Code. However, only those Claims allowed pursuant to § 502(a) of the Bankruptcy Code will receive payment under the Plan.

     **1.17** **Collateral**. Property which is pledged as security for the satisfaction of a debt. Collateral is additional security for performance of principal obligation, or that which is by the side, and not in direct line. Property subject to a security interest, including accounts, contract rights and chattel paper which have been sold.

     **1.18** **Collateral Value**. Collateral Value is the fair market value of the any collateral as determined by the Court.

     **1.19** **Confirmation**. The formal approval of the Bankruptcy Court of a Plan Of Reorganization.

     **1.20** **Confirmation Date**. The date upon which the Confirmation Order is entered by the Court.

     **1.21** **Confirmation Hearing**. This term refers to and means the hearing regarding confirmation of the Plan conducted by the Bankruptcy Court pursuant to Bankruptcy Code § 1128, including any adjournment or continuation of that hearing from time to time.

     **1.22** **Confirmation Order**. The Final Order of the Court determining that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to Confirmation.

     **1.23** **Creditor**. A Creditor or all Creditors of the Debtor holding Allowed Claims for the debts, liabilities, demands or Claims of any character whatsoever, as defined in § 101(4) of the Bankruptcy Code.

     **1.24** **Debtor**. The Debtor is Mendocino Realty, LLC, also referred in the Plan as "Mendocino".

**1.25 Disclosure Statement.** The Disclosure Statement is the Disclosure Statement In Support Of Debtor's Plan of Reorganization in its present form, or as it may be amended or supplemented.

**1.26 Disputed Claim.** This term refers to and means every Claim: (a) that is scheduled by the Debtors as disputed, contingent, or unliquidated; and/or (b) that is not an Allowed Claim.

**1.27 Effective Date.** The date following the Confirmation Date after which no appeal of the Confirmation Order can be taken or sixty (10) days from the Confirmation Date, whichever is later.

**1.28 Estate.** This term refers to and means the bankruptcy estate of the Debtor created under Bankruptcy Code § 541.

**1.29 Executory Contract.** This term refers to and means every unexpired lease and other contract which is subject to being assumed or rejected under Bankruptcy Code § 365.

**1.30 Final Order.** A Final Order is an order of the Court which, not having been reversed, modified or amended and not being stayed and the time to appeal from which or to seek review or rehearing of which having expired, and no such appeal, review, certiorari or rehearing is pending, has become conclusive of all matters adjudicated thereby and in full force and effect.

**1.31 Impaired/Impaired Class** Under § 1124 of the Bankruptcy Code, a Class Of Claims is impaired under a Plan unless, with respect to each Claim of such Class: (i) it is paid in full on the Effective Date of the Plan; (ii) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder to such Claim; or (iii) all defaults are cured, the original maturity of the Claim is reinstated and the Claim is otherwise treated as provided in clause (ii) above.

**1.32 Interests.** This term refers to and means the rights of the members of the Debtor.

**1.33 Interpretation.** The headings in this Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

**1.34 IRS.** This term refers to and means the Internal Revenue Service.

**1.35 Personal Property.** This term refers to and means all personal property owned by Debtor.

**1.36 Plan.** This term refers to and means this Plan of Reorganization Proposed By the Debtor and every modification thereof, if any, filed by the Debtor.

**1.37 Plan Confirmation.** Entry by the Court of an order confirming the Plan at or after a hearing held pursuant to § 1128 of the Bankruptcy Code.

**1.38 Preserved Lien(s).** Any liens required under § 1124(2) of the Bankruptcy Code.

**1.39 Priority Claim(s).** Any Claim or Claims entitled to priority pursuant to § 507(a) of the Bankruptcy Code other than a Tax Claim or a Claim for Administrative Expenses.

**1.40 Professional Charges.** This term refers to and means all professional fees and costs by professional persons approved by the Bankruptcy Court to serve the Debtors or the Committee which have accrued during the pendency of the Debtors' Bankruptcy Cases up to and including the Confirmation Date.

**1.41 Property:** All real and personal Property (individually or as a whole) of the estate of the Debtor as previously or hereafter determined by Final Order of a court of competent jurisdiction and/or as defined in § 541 of the Bankruptcy Code, including, but not limited to, any and all Claims or causes of action in favor of the Debtor against third parties (except as otherwise provided herein).

**1.42 Property Broker.** This term refers to and means the independent person engaged to market and sell the property or any portion thereof.

**1.43 Proponent.** This term refers to and means the Debtor who is proposing this Plan of Reorganization.

**1.44 Pro Rata.** This term refers to and means proportionally, so that the ratio of the consideration distributed on account of an Allowed Claim in the Class (or sub-class) and consideration distributed on account of all Allowed Claims in the Class (or sub-class) is the same as the ratio of the Allowed Claims in the Class (or sub-class).

**1.45 Real Property** This term refers any of the real property of the Debtor as oppose to personal property.

**1.46 Reorganized Debtor.** The Debtor, after Confirmation of the Plan, and its successors and assigns.

**1.47 Secured Claim(s).** Any Claims, other than a Tax Claim, secured by Property of the Debtor under a duly perfected security interest, to the extent of the value of the Collateral (security), as determined in accordance with § 506 of the Bankruptcy Code.

**1.48 Secured Creditor(s)**. All Creditors other than taxing entities, who hold a lien, security interest or other encumbrance which has been properly perfected as required by law with respect to Property owned by the Debtor.

**1.49 Tax Claim(s)**. Any Claim for taxes entitled to priority pursuant to § 507(a)(7) of the Bankruptcy Code.

**1.50 Term Of The Plan**. That period after the Effective Date during which payments are being made to Creditors in Classes 5.

**1.51 Unsecured Claim(s)**: All Claims not secured by collateral of the estate.

**1.52 Unsecured Creditor(s)**. All Creditors of Debtor holding Unsecured Claims of any character whatsoever, except Claims entitled to priority pursuant to § 507 of the Bankruptcy Code.

**1.53 Unsecured Deficiency Claimant(s)**. Claims resulting from the excess of the Secured Claims over the Collateral Value, as determined pursuant to § 506 of the Bankruptcy Code or unless otherwise agreed to by the Secured Creditors.

**1.54 Undefined Terms**. Terms and phrase, whether capitalized or not, that are used and not defined herein, but are defined by the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code.

# EXHIBIT 1
# TO THE PLAN

**Mendocino Tenant List**
**October 21, 2009**

| Property Address | Tenant | Monthly Rent | Term |
|---|---|---|---|
| 11858 N 30th Dr<br>Phoenix, AZ 85029 | Bonnie& Kelly Howell | $1095.00 | 4/30/2010 |
| 3612 E Altadena Ave<br>Phoenix, AZ 85028-2104 | Bentley & Irina Bremmon | $1125.00 | 3/31/2010 |
| 1901 W. Utopia Rd<br>Phoenix, AZ 85027 | James & Esther Oloyede | $1095 | Month-to-month |
| 17243 N. 24th Lane<br>Phoenix, AZ 85023 | Kimberly Christopher | $950.49 | 5/31/2010 |
| 5413 W. Carribean Lane<br>Glendale, AZ 85306 | Dina Motee | $875.00 | 4/31/2011 |
| 2242 W. Charleston Ave<br>Phoenix, AZ 85023 | Everet Crouch | $950.00 | 1/31/2010 |
| 7137 W. Cinnabar<br>Peoria, AZ 85345 | James Russell Jr. | $1075.00 | Month-to-month |
| 1842 N. Laurel Ave<br>Phoenix, AZ 85007 | Jill Martin | $935.00 | 5/31/2010 |
| 2741 E. Sweetwater Ave<br>Phoenix, AZ 85032 | Ed, Pam & Russell Seibert | $895.00 | 5/30/2010 |
| 5601 N. 65th Ave<br>Glendale, AZ 85301-5620 | Patricia Avila | $850.00 | Month-to-month |
| 109 N. 133rd St<br>Chandler, AZ 85225 | Vikki & Chris Miller | $1095.00 | 7/31/2010 |
| 4451 E. Hidalgo Ave<br>Phoenix, AZ 85040 | Rose Lukavsky | $725.00 | 4/30/2010 |
| 1511 W. Campbell Ave<br>Phoenix, AZ 85015-3820 | Charles Paiva | $850.00 | 3/31/2010 |
| 7340 N 39th Ave<br>Phoenix, AZ 85051 | Robert & Norma Torres | $1045.00 | Month-to-month |
| 1108 N. 28th Dr<br>Phoenix, AZ 85009 | Ronald & Rosalind Mason | $750.00 | 8/31/2010 |
| 2427 W. Le Marche Ave<br>Phoenix, AZ 85023 | Carmen Kennedy | $1250.00 | 2/28/2010 |
| 7916 W. Minnezona Ave<br>Phoenix, AZ 85033 | Michelle Mansfield | $625.00 | 3/31/2010 |
| 1115 W. Ironwood Dr<br>Phoenix, AZ 85021 | Dustin, Steve, Hazel Fagan | $575.00 | 8/31/2010 |
| | | | |

**EXHIBIT 2**

## Mendocino Realty, LLC

| Class | Property | Lender | Law Firm | Allowed Valuation/Interest Rate | Objection | Stipulated Treatment |
|---|---|---|---|---|---|---|
| 3/V6.16 | 1511 W. Sanibal Ave. Phoenix AZ 85016 | EMC Home Mortgage Corporation | Tiffany & Bosco | $51,500 at 5.25% over 360m | Objection | $51,500 at 5.25% over 360m |
| 3/V6.08 | 1842 N. Laurel Avenue Phoenix AZ 85007 | American Service Corporation | Tiffany & Bosco | $161,500 at 5.25% over 360m | Objection | $161,000 at 5.25%, note maturity date |
| 3/6.09 | 2741 E. Sweetwater Avenue Phoenix AZ 85032 | American Service Corporation | Tiffany & Bosco | $107,500 at 5.25% over 360m | Objection | $107,000 at 5.25%, note maturity date |
| 3/2/6.04 | 17243 N. 24th Lane Phoenix AZ 85023 | American Service Corporation | Tiffany & Bosco | $97,500 at 5.25% over 360m | Objection | $97,500 at 5.25%, note maturity date |
| 3/6.05 | 5413 W. Sandra Lane Glendale AZ 85306 | American Service Corporation | Tiffany & Bosco | $86,500 at 5.25% over 360m | Objection | $86,500 at 5.25%, note maturity date |
| 3/6.06 | 22421 W. Chameleon Avenue Phoenix AZ 85383 | American Service Corporation | Tiffany & Bosco | $67,500 at 5.25% over 360m | Objection | $67,500 at 5.25%, note maturity date |
| 3/6.07 | 931 W. Zinnia Avenue Peoria AZ 85345 | American Service Corporation | Tiffany & Bosco | $57,500 at 5.25% over 360m | Objection | $57,000 at 5.25%, note maturity date |
| 3/X6.13 | 4731 S. Indigo Ave. Phoenix AZ 85339 | Bank of America | No Firm | $67,500 at 5.25% over 360m | No Objection | None |
| Undfd | 103 ... St. Chandler AZ 85225 | Bank of America | No Firm | $91,500 at 5.25% over 360m | No Objection | None |
| 3/X6.18 | ... Glendale AZ 85301 | Bank of America | No Firm | $87,500 at 5.25% over 360m | No Objection | None |

## Mendocino Realty, LLC

| Bank or agent / Property, if Mortgage Equity | Unknown Out of foreclosure action started | Balance payments current in one year after the resale date | Chart key | Signature on note |
|---|---|---|---|---|
| KEY | Mazzetti & Realitus | Tiffany & Bosco | No Firm | Main Street |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**EXHIBIT 3**

1 | DAVID E. McALLISTER (AZ BN 021551)
JOSEPHINE E. PIRANIO (AZ BN 020630)
2 | BRIAN A. PAINO (AZ BN 027091)
PITE DUNCAN, LLP
3 | 4375 Jutland Drive, Suite 200
P.O. Box 17933
4 | San Diego, CA 92177-0933
Telephone: (858) 750-7600
5 | Facsimile: (619) 590-1385

6 | Attorneys for THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL
ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A.
7 | AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE FOR
RAMP 2005RS8

8

9

10 | **UNITED STATES BANKRUPTCY COURT**

11 | **DISTRICT OF ARIZONA - PHOENIX DIVISION**

| 12 | In re | Case No. 2:09-BK-27737-RJH |
|----|-------|---------------------------|
| 13 | MENDOCINO REALTY, INC. | Chapter 11 |
| 14 | Debtor(s). | |
| 15 | | **STIPULATION RE: TREATMENT OF THE BANK OF NEW YORK MELLON** |
| 16 | | **TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF** |
| 17 | | **NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN** |
| 18 | | **CHASE BANK N.A. AS TRUSTEE FOR RAMP 2005RS8 'S CLAIM UNDER** |
| 19 | | **DEBTOR'S PROPOSED CHAPTER 11 PLAN OF REORGANIZATION** |
| 20 | | |

21

22 |     This Stipulation is entered into by and between Secured Creditor, The Bank of New York

23 | Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A.

24 | as successor to JPMorgan Chase Bank N.A. as Trustee for RAMP 2005RS8 ("Creditor"), by and

25 | through its attorneys of record, and Mendocino Realty, Inc., herein (the "Debtor"). by and their

26 | attorneys of record.

27 | ///

28 | ///

1    The property which is the subject of this matter is commonly known as 7340 North 39th

2    Avenue, Phoenix, Arizona 85051 (hereinafter the "Subject Property"), which is more fully

3    described as follows:

4        LOT 293, OF MELROSE SHADOWS, UNIT TWO,
         ACCORDING TO THE PLAT OF RECORD IN THE OFFICE
         OF THE COUNTY RECORDER OF MARICOPA COUNTY,
5        ARIZONA, RECORDED IN BOOK 89 OF MAPS, PAGE 39

6        On or about June 6, 2005, Donald W. Park ("Borrower"), for valuable consideration,

7    made, executed and delivered to Concord Mortgage Company ("Lender") a Note in the principal

8    sum of $120,000.00 (the "Note"). A true and correct copy of the Note is attached hereto as

9    exhibit A and incorporated herein by reference.

10       On or about June 6, 2005, Borrower made, executed and delivered to Lender a Deed of

11   Trust (the "Deed of Trust") granting Lender a security interest in the Subject Property. The

12   Deed of Trust was recorded on June 14, 2005, in the Official Records of Maricopa County, State

13   of Arizona. A true and correct copy of the Deed of Trust is attached hereto as exhibit B and

14   incorporated herein by reference.

15       Subsequently, Lender's beneficial interest in the Note and Deed of Trust was sold,

16   assigned and transferred to Creditor. A true and correct copy of the Corporation Assignment of

17   Deed of Trust evidencing the assignment of the Note and Deed of Trust to Creditor is attached

18   hereto as exhibit C and incorporated herein by reference.

19       On or about July 30, 2004, Borrower transferred Borrower's interest in the Subject

20   Property to the Mendocino Reality, Inc. A true and correct copy of the Warranty Deed

21   evidencing the transfer of interest is attached hereto as exhibit D and incorporated herein by

22   reference.

23       On or about October 29, 2009, Mendocino Realty, Inc. filed a voluntary petition under

24   Chapter 11 of the United States Bankruptcy Code and was assigned Bankruptcy Case No. 2:09-

25   BK-27737-RJH.

26       On or about January 15, 2010, Creditor filed a Proof of Claim against the Borrower's

27   bankruptcy estate in the amount of $123,576.93 secured by the Subject Property.

28       On or about March 1, 2010, Debtors filed their proposed First Amended Chapter 11 Plan

- 2 -

1  of Reorganization (hereinafter the "Plan").

2      Plan section 2.17 classified the Creditor's secured claim as "Class 3N" and had identified
3  the Creditor as "GMAC/Homecomings Financial" or "GMAC/HF". "GMAC/HF" is a
4  predecessor of the Creditor. Plan section 6.14 sets forth the treatment of Class 3N. The
5  following stipulation shall modify parts of sections 2.17 and 6.14 of the Plan.

6      THE PARTIES STIPULATE AS FOLLOWS:

7      1.   Creditor shall have a secured claim in the amount of $69,000.00 (the "Secured
8  Claim").

9      2.   Creditor's Secured Claim shall be amortized over 360 months at a fixed 5.25%
10 interest rate.

11     3.   Debtors shall tender regular monthly payments in the sum of $563.77 (which
12 includes an escrow impound of $182.75) to Creditor for the Secured Claim commencing April 1,
13 2010, and continuing until all such outstanding amounts under the Secured Claim are to be paid
14 in full. Pre-confirmation the subject payments shall be tendered to the Creditor by sending the
15 payments to the Pite Duncan, LLP law firm, counsel for the Creditor. Post-confirmation the
16 subject payments shall be tendered to the Secured Creditor pursuant to the terms of the Plan,
17 except as those terms have been modified by this agreement.

18     4.   Debtors shall maintain real property hazard insurance for the Subject Property,
19 and provide proof of said insurance to Creditor on a timely basis. The Debtor shall keep all post-
20 petition real property taxes for the Subject Property current. Pre-petition real property taxes for
21 the Subject Property shall be paid pursuant to the terms of the Debtor's Plan.

22     5.   Creditor waives the following fees in connection with the Secured Claim: late
23 charges in the amount of $57.48, inspection fees in the amount of $22.50, interest in the amount
24 of $3,449.10, escrow shortages in the amount of $1,041.45, and default fees in the amount of
25 $1,598.35.

26     6.   Except as otherwise expressly provided herein, all remaining terms of the Note
27 and Deed of Trust shall govern the treatment of Creditor's Secured Claim.

28 ///

- 3 -

7.    In the event of any future default on any of the above-described provisions, inclusive of this Stipulation, Creditor shall provide written notice via certified mail to Mendocino Realty, Inc. at Post Office Box 7065 Phoenix, AZ 85011, Donald W Park at 7340 North 39th Avenue, Phoenix, Arizona 85051, and to Debtors' attorney of record, Mark J. Giunta, at 1413 N 3rd St Phoenix, AZ 85004-1612, indicating the nature of default. If Debtors fail to cure the default with certified funds after passage of thirty (30) calendar days from the date said written notice is placed in the mail, then Creditor may proceed to foreclose its security interest in the Subject Property under the terms of the Note and Deed of Trust and pursuant to applicable state law and thereafter commence any action necessary to obtain complete possession of the Subject Property without further notice, order, or proceeding of this Court.

8.    The acceptance by Creditor of a late or partial payment shall not act as a waiver of Creditor's right to proceed hereunder.

9.    In the event that Creditor is granted relief from the automatic stay, the parties hereby stipulate that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

10.    10.    At the request of the Creditor, the Debtor shall execute such documents and instruments as are necessary to reflect the Debtor as the borrower of the Secured Claim, and to modify the terms of the obligation to conform with the provisions of the this Stipulation.

11.    The terms of this Stipulation shall be incorporated into the Plan and/or any subsequently filed Amended Chapter 11 Plan of Reorganization and shall not be modified, altered or changed in any subsequent amendment to the Plan, or separately filed Amended Chapter 11 Plan, or any confirmation order without the express written consent of the Creditor.

12.    In the event the Debtor's case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, Creditor shall retain its lien in the full amount due under the Note and the automatic stay shall be terminated without further notice, order, or proceeding of the court.

///

///

///

- 4 -

13. In exchange for the foregoing, Creditor accepts the Debtors' Plan, withdraws any pending objection to the Debtor's Plan, and shall file a ballot accepting the Debtor's Plan.

Dated: _____3/25/2010_____

/s/ MJG_015079
MARK J. GIUNTA
Attorney for the Debtors

Dated: _3/26/2010_

PITE DUNCAN, LLP

JOSEPHINE E. PIRANIO
Attorneys for The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A. as Trustee for RAMP 2005RS8

- 5 -



**EXHIBIT 4**

# TIFFANY & BOSCO
P.A.

2525 E. CAMELBACK ROAD
SUITE 300
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0192
Mark S. Bosco
State Bar No. 010167
Leonard J. McDonald
State Bar No. 014228
Attorneys for Movant

10-01366

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

IN RE:

Mendocino Realty, Inc.
    Debtor.

The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JP Morgan Chase Bank NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-7, Mortgage Pass-Through Certificates, Series 2005-7 by its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc.

    Movant,

vs.

Mendocino Realty, Inc., Debtor; U.S. Trustee, Trustee.

    Respondents.

No. 2:09-bk-27737-RJH

Chapter 11

**STIPULATION REGARDING PLAN TREATMENT AND TO VALUATE THE FIRST LIEN ENCIMBERING REAL PROPERTY LOCATED AT 5413 WEST CARIBBEAN LANE GLENDALE, AZ 85306**

IT IS HEREBY STIPULATED by and between the parties herein, the Movant, and Debtor and Debtor-In-Possession, Mendocino Realty, LLC ("Mendocino" or "Debtor") through counsel undersigned, that the property generally described as 5413 West Caribbean Way, Glendale, Arizona 85306 and legally described as:

Lot 1739, DEERVIEW UNIT SEVENTEEN, according to the Plat of Record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 150 of Maps, page 10.

("Property"), shall be treated as follows:

Movant shall be deemed to have an allowed secured claim in the amount of $88,500 pursuant to 11 U.S.C. section 506 and the Debtor's Plan of Reorganization ("Plan"). Movant's allowed secured claim shall be repaid through the Plan with interest fixed at 5.25% per annum and the term of the repayment shall be reduced to the maturity date of the original Note.

All other terms and conditions of the original Note and Mortgage, except as otherwise modified by this Stipulation and Plan, shall remain in full force and effect.

This Stipulation shall be incorporated into the Debtor's confirmed Chapter 11 Plan, and the Stipulation may not be altered in any way by any subsequent amendment or modification to the Plan, without express written consent of the Movant.

The Debtor hereby waives objections to Movant's claim in regard to the Property as modified by this Stipulation for all purposes besides accounting for the respective claims.

The agreements contained in this Stipulation shall be binding for purposes of the treatment of the Property in the Debtor's confirmed Chapter 11 Plan, unless otherwise stipulated to in writing.

In the event this case is converted to a Chapter 7 or dismissed, this Stipulation shall be deemed void and unenforceable.

Movant withdrew its objection to the Plan and was deemed to vote to accept the Plan.

SO STIPULATED:

Dated: 9/30/10

BY: _____
Leonard McDonald, Esq
Attorney for Movant

Dated: 9/30/10

BY: /s/ Mark J. Giunta_____
Mark J. Giunta, Esq.
Attorney for Debtor-in-Possession



**EXHIBIT 5**

# TIFFANY & BOSCO
### P.A.

2525 E. CAMELBACK ROAD
SUITE 300
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0192
Mark S. Bosco
State Bar No. 010167
Leonard J. McDonald
State Bar No. 014228
Attorneys for Movant

10-02348

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: | No. 2:09-bk-27737-RJH |
| Mendocino Realty, Inc. | Chapter 11 |
| Debtor. | **STIPULATION REGARDING PLAN TREATMENT AND TO VALUATE THE FIRST LIEN ENCIMBERING REAL PROPERTY LOCATED AT 1511 W CAMPBELL AVENUE PHOENIX, AZ 85015** |
| The Bank of New York Mellon formerly known as The Bank of New York as successor Trustee to JPMorgan Chase Bank, National Association as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2005-10 | |
| Movant, | |
| vs. | |
| Mendocino Realty, Inc., Debtor; , Trustee. | |
| Respondents. | |

IT IS HEREBY STIPULATED by and between the parties herein, the Movant, and Debtor

and Debtor-In-Possession, Mendocino Realty, LLC ("Mendocino" or "Debtor") through counsel

undersigned, that the property generally described as 1511 W Campbell Avenue, Phoenix, AZ 85015

and legally described as:

LOT 3, OF BONNIE LEA, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED BOOK 39 OF MAPS, PAGE 25.

("Property"), shall be treated as follows:

Movant shall be deemed to have an allowed secured claim in the amount of $51,500.00 pursuant to 11 U.S.C. section 506 and the Debtor's Plan of Reorganization ("Plan"). Movant's allowed secured claim shall be repaid through the Plan with interest fixed at 5.25% per annum and the term of the repayment shall paid over (30) thirty years. All other terms and conditions of the original Note and Mortgage, including the default provisions, shall remain in full force and effect.

This Stipulation shall be incorporated into the Debtor's confirmed Chapter 11 Plan, and the Stipulation may not be altered in any way by any subsequent amendment or modification to the Plan without express written consent of the Movant.

The Debtor hereby waives objections to Movant's claim in regard to the Property as modified by this Stipulation for all purposes besides accounting for the respective claims.

The agreements contained in this Stipulation shall be binding for purposes of the treatment of the Property in the Debtor's confirmed Chapter 11 Plan, unless otherwise stipulated to in writing.

In the event this case is converted to a Chapter 7 or dismissed, this Stipulation shall be deemed void and unenforceable.

Movant withdrew its objection to the Plan and was deemed to vote to accept the Plan.

SO STIPULATED:

Dated: 9/30/10

BY: _____
Leonard McDonald, Esq.
Attorney for Movant

Dated: 9/30/10

BY: /s/ Mark J. Giunta_____
Mark J. Giunta, Esq.
Attorney for Debtor-in-Possession



**EXHIBIT 6**

# TIFFANY & BOSCO
### P.A.

1

2525 E. CAMELBACK ROAD
SUITE 300

2

3

PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6000

4

FACSIMILE: (602) 255-0192

Mark S. Bosco

5

State Bar No. 010167
Leonard J. McDonald

6

State Bar No. 014228
Attorneys for Movant

7

10-01377

8

IN THE UNITED STATES BANKRUPTCY COURT

9

FOR THE DISTRICT OF ARIZONA

10

11

IN RE:

No. 2:09-bk-27737-RJH

12

Mendocino Realty, Inc.

Chapter 11

13

Debtor.

14

The Bank of New York Mellon, fka The Bank of

15

New York as Successor in interest to JP Morgan
Chase Bank NA as Trustee for Structured Asset

16

Mortgage Investments II Inc. Bear Stearns ALT-A
Trust 2005-7, Mortgage Pass-Through Certificates,

17

Series 2005-7 by its Attorney in fact Wells Fargo
Bank, N.A.

18

**STIPULATION REGARDING
PLAN TREATMENT AND TO VALUATE
THE FIRST LIEN ENCUMBERING REAL
PROPERTY LOCATED AT
17243 NORTH 24TH LANE
PHOENIX, AZ 85023**

19

Movant,
vs.

20

21

Mendocino Realty, Inc., Debtor; , Trustee.

22

Respondents.

23

IT IS HEREBY STIPULATED by and between the parties herein, the Movant, and Debtor

24

and Debtor-In-Possession, Mendocino Realty, LLC ("Mendocino" or "Debtor") through counsel

25

26

undersigned, that the property generally described as 17243 North 24th Lane , Phoenix, AZ 85023

and legally described as:

Lot 78, VILLAGE MEADOWS NO. 2, according to the Plat of Record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 80 of Maps, page 30; EXCEPT all gas, oil, metal and minerals rights as reserved in the Patent.


("Property"), shall be treated as follows:

Movant shall be deemed to have an allowed secured claim in the amount of $87,500.00, pursuant to 11 U.S.C. section 506 and the Debtor's Plan of Reorganization ("Plan"). Movant's allowed secured claim shall be repaid through the Plan with interest fixed at 5.25% per annum and the term of the repayment shall be reduced to the maturity date of the original Note.

All other terms and conditions of the original Note and Mortgage, except as otherwise modified by this Stipulation and Plan, shall remain in full force and effect.

This Stipulation shall be incorporated into the Debtor's confirmed Chapter 11 Plan, and the Stipulation may not be altered in any way by any subsequent amendment or modification to the Plan without express written consent of the Movant.

The Debtor hereby waives objections to Movant's claim in regard to the Property as modified by this Stipulation for all purposes besides accounting for the respective claims.

The agreements contained in this Stipulation shall be binding for purposes of the treatment of the Property in the Debtor's confirmed Chapter 11 Plan, unless otherwise stipulated to in writing.

In the event this case is converted to a Chapter 7 or dismissed, this Stipulation shall be deemed void and unenforceable.

Movant withdrew its objection to the Plan and was deemed to vote to accept the Plan.

SO STIPULATED:

Dated: 9/30/10

BY: _____
Leonard McDonald, Esq
Attorney for Movant

Dated: 9/30/10

BY: /s/ Mark J. Giunta
Mark J. Giunta, Esq.
Attorney for Debtor-in-Possession



**EXHIBIT 7**

# TIFFANY & BOSCO
### P.A.

2525 E. CAMELBACK ROAD.
SUITE 300
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6000.
FACSIMILE: (602) 255-0192
Mark S. Bosco
State Bar No. 010167
Leonard J. McDonald
State Bar No. 014228
Attorneys for Movant

10-01373

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: | No. 2:09-bk-27737-RJH |
| Mendocino Realty, Inc. | Chapter 11 |
| Debtor. | **STIPULATION REGARDING PLAN TREATMENT AND TO VALUATE THE FIRST LIEN ENCUMBERING REAL PROPERTY LOCATED AT 1842 NORTH LAUREL AVENUE PHOENIX, AZ 85007** |
| The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JPMorgan Chase Bank, NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-9, Mortgage Pass-Through Certificates, Series 2005-9 by its Attorney in fact Wells Fargo Bank, N.A. | |
| Movant, | |
| vs. | |
| Mendocino Realty, Inc., Debtor; U.S. Trustee, Trustee. | |
| Respondents. | |

IT IS HEREBY STIPULATED by and between the parties herein, the Movant, and Debtor and Debtor-In-Possession, Mendocino Realty, LLC ("Mendocino" or "Debtor") through counsel.

undersigned, that the property generally described as 1842 North Laurel Avenue, Phoenix, AZ 85007

and legally described as:

Lot 7, and 9, Block 7, of FAIRVIEW PLACE, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded Book 8 of Maps, page 10.

("Property"), shall be treated as follows:

Movant shall be deemed to have an allowed secured claim in the amount of $101,000.00 pursuant to 11 U.S.C. section 506 and the Debtor's Plan of Reorganization ("Plan"). Movant's allowed secured claim shall be repaid through the Plan with interest fixed at 5.25% per annum and the term of the repayment shall be reduced to the maturity date of the original Note. All other terms and conditions of the original Note and Mortgage, including the default provisions, shall remain in full force and effect.

All other terms and conditions of the original Note and Mortgage, except as otherwise modified by this Stipulation and Plan, shall remain in full force and effect.

This Stipulation shall be incorporated into the Debtor's confirmed Chapter 11 Plan, and the Stipulation may not be altered in any way by any subsequent amendment or modification to the Plan without express written consent of the Movant.

The Debtor hereby waives objections to Movant's claim in regard to the Property as modified by this Stipulation for all purposes besides accounting for the respective claims.

The agreements contained in this Stipulation shall be binding for purposes of the treatment of the Property in the Debtor's confirmed Chapter 11 Plan, unless otherwise stipulated to in writing.

In the event this case is converted to a Chapter 7 or dismissed, this Stipulation shall be deemed void and unenforceable.

Movant withdrew its objection to the Plan and was deemed to vote to accept the Plan.

1

2   SO STIPULATED:

3   Dated: 9/30/10                          BY: _____
                                                Leonard McDonald, Esq.
4                                               Attorney for Movant

5   Dated: 9/30/10                          BY: /s/ Mark J. Giunta_____
                                                Mark J. Giunta, Esq.
6                                               Attorney for Debtor-in-Possession

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**EXHIBIT 8**

## TIFFANY & BOSCO
### P.A.

2525 E. CAMELBACK ROAD
SUITE 300
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0192
Mark S. Bosco
State Bar No. 010167
Leonard J. McDonald
State Bar No. 014228
Attorneys for Movant

10-01371

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: | No. 2:09-bk-27737-RJH |
| Mendocino Realty, Inc. | Chapter 11 |
| Debtor. | **STIPULATION REGARDING PLAN TREATMENT AND TO VALUATE THE FIRST LIEN ENCIMBERING REAL PROPERTY LOCATED AT 2741 EAST SWEETWATER AVENUE PHOENIX, AZ 85032** |
| The Bank of New York Mellon, fka The Bank of New York as Successor-in-interest to JP Morgan Chase Bank NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A 2005-4, Mortgage Pass-Through Certificates, Series 2005-4 by its Attorney in fact Wells Fargo Bank, N.A. | |
| Movant, | |
| vs. | |
| Mendocino Realty, Inc., Debtor; , Trustee. | |
| Respondents. | |

IT IS HEREBY STIPULATED by and between the parties herein, the Movant, and Debtor and Debtor-In-Possession, Mendocino Realty, LLC ("Mendocino" or "Debtor") through counsel undersigned, that the property generally described as 2741 East Sweetwater Avenue , Phoenix, AZ 85032 and legally described as:

Lot 126, of CLEARVIEW SIX, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 141 of Maps, page 24.

("Property"), shall be treated as follows:

Movant shall be deemed to have an allowed secured claim in the amount of $107,000.00, pursuant to 11 U.S.C. section 506 and the Debtor's Plan of Reorganization ("Plan"). Movant's allowed secured claim shall be repaid through the Plan with interest fixed at 5.25% per annum and the term of the repayment shall be reduced to the maturity date of the original Note.

All other terms and conditions of the original Note and Mortgage, except as otherwise modified by this Stipulation and Plan, shall remain in full force and effect.

This Stipulation shall be incorporated into the Debtor's confirmed Chapter 11 Plan, and the Stipulation may not be altered in any way by any subsequent amendment or modification to the Plan without express written consent of the Movant.

The Debtor hereby waives objections to Movant's claim in regard to the Property as modified by this Stipulation for all purposes besides accounting for the respective claims.

The agreements contained in this Stipulation shall be binding for purposes of the treatment of the Property in the Debtor's confirmed Chapter 11 Plan, unless otherwise stipulated to in writing.

In the event this case is converted to a Chapter 7 or dismissed, this Stipulation shall be deemed void and unenforceable.

1

2    Movant withdrew its objection to the Plan and was deemed to vote to accept the Plan.

3

4    SO STIPULATED:

5    Dated: 9/30/10                    BY: _____
                                            Leonard McDonald, Esq
6                                          Attorney for Movant

7    Dated: 9/30/10                    BY: /s/ Mark J. Giunta
                                            Mark J. Giunta, Esq.
8                                          Attorney for Debtor-in-Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**EXHIBIT 9**

## TIFFANY & BOSCO
##### P.A.

2525 E. CAMELBACK ROAD
SUITE 300
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0192
Mark S. Bosco
State Bar No. 010167
Leonard J. McDonald
State Bar No. 014228
Attorneys for Movant

10-01337

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: | No. 2:09-bk-27737-RJH |
| Mendocino Realty, Inc.<br>Debtor. | Chapter 11 |
| The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JP Morgan Chase Bank NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-7, Mortgage Pass-Through Certificates, Series 2005-7 by its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc. | **STIPULATION REGARDING PLAN TREATMENT AND TO VALUATE THE FIRST LIEN ENCIMBERING REAL PROPERTY LOCATED AT 7137 WEST CINNABAR AVENUE PEORIA, ARIZONA 85345** |
| Movant,<br>vs. | |
| Mendocino Realty, Inc., Debtor; U.S. Trustee, Trustee. | |
| Respondents. | |

IT IS HEREBY STIPULATED by and between the parties herein, the Movant, and Debtor and Debtor-In-Possession, Mendocino Realty, LLC ("Mendocino" or "Debtor") through counsel undersigned, that the property generally described as 7137 West Cinnabar Avenue, Peoria, AZ 85345 and legally described as:

Lot 58, of SUNTOWN UNIT FOUR, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded Book 162 of Maps, page 10.

("Property"), shall be treated as follows:

Movant shall be deemed to have an allowed secured claim in the amount of $57,000 pursuant to 11 U.S.C. section 506 and the Debtor's Plan of Reorganization ("Plan"). Movant's allowed secured claim shall be repaid through the Plan with interest fixed at 5.25% per annum and the term of the repayment shall be reduced to the maturity date of the original Note.

All other terms and conditions of the original Note and Mortgage, except as otherwise modified by this Stipulation and Plan, shall remain in full force and effect.

This Stipulation shall be incorporated into the Debtor's confirmed Chapter 11 Plan, and the Stipulation may not be altered in any way by any subsequent amendment or modification to the Plan without express written consent of the Movant.

The Debtor hereby waives objections to Movant's claim in regard to the Property as modified by this Stipulation for all purposes besides accounting for the respective claims.

The agreements contained in this Stipulation shall be binding for purposes of the treatment of the Property in the Debtor's confirmed Chapter 11 Plan, unless otherwise stipulated to in writing.

In the event this case is converted to a Chapter 7 or dismissed, this Stipulation shall be deemed void and unenforceable.

1

2　　　　　Movant withdrew its objection to the Plan and was deemed to vote to accept the Plan.

3

4　SO STIPULATED:

5　Dated: 9/30/10

BY: _____
　　　Leonard McDonald, Esq.
　　　Attorney for Movant

6

7　Dated: 9/30/10

BY: /s/ Mark J. Giunta
　　　Mark J. Giunta, Esq.
　　　Attorney for Debtor-in-Possession

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**EXHIBIT 10**

# TIFFANY & BOSCO
### P.A.

2525 E. CAMELBACK ROAD
SUITE 300
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0192

Mark S. Bosco
State Bar No. 010167
Leonard J. McDonald
State Bar No. 014228
Attorneys for Movant

10-01324

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: | No. 2:09-bk-27737-RJH |
| Mendocino Realty, Inc. | Chapter 11 |
| Debtor. | |
| The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JP Morgan Chase Bank NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-5, Mortgage Pass-Through Certificates, Series 2005-5 by its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc. | **STIPULATION REGARDING PLAN TREATMENT AND TO VALUATE THE FIRST LIEN ENCIMBERING REAL PROPERTY LOCATED AT 2242 WEST CHARLSTON AVENUE PHOENIX, AZ 85023** |
| Movant, | |
| vs. | |
| Mendocino Realty, Inc., Debtor; U.S. Trustee, Trustee. | |
| Respondents. | |

IT IS HEREBY STIPULATED by and between the parties herein, the Movant, and Debtor and Debtor-In-Possession, Mendocino Realty, LLC ("Mendocino" or "Debtor") through counsel undersigned, that the property generally described as 2242 West Charlston Avenue, Phoenix, AZ 85023 and legally described as:

Lot 211, SUMMERSET, according to the Plat of Record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 146 of Maps, page 4 and Certificate of Correction recorded in Docket 9695, page 878.

("Property"), shall be treated as follows:

Movant shall be deemed to have an allowed secured claim in the amount of $87,500.00. pursuant to 11 U.S.C. section 506 and the Debtor's Plan of Reorganization ("Plan"). Movant's allowed secured claim shall be repaid through the Plan with interest fixed at 5.25% per annum and the term of the repayment shall be reduced to the maturity date of the original Note.

All other terms and conditions of the original Note and Mortgage, except as otherwise modified by this Stipulation and Plan, shall remain in full force and effect.

This Stipulation shall be incorporated into the Debtor's confirmed Chapter 11 Plan, and the Stipulation may not be altered in any way by any subsequent amendment or modification to the Plan without express written consent of the Movant.

The Debtor hereby waives objections to Movant's claim in regard to the Property as modified by this Stipulation for all purposes besides accounting for the respective claims.

The agreements contained in this Stipulation shall be binding for purposes of the treatment of the Property in the Debtor's confirmed Chapter 11 Plan, unless otherwise stipulated to in writing.

In the event this case is converted to a Chapter 7 or dismissed, this Stipulation shall be deemed void and unenforceable.

Movant withdrew its objection to the Plan and was deemed to vote to accept the Plan.

SO STIPULATED:

Dated: 9/30/10                                    BY: _____
                                                       Leonard McDonald, Esq
                                                       Attorney for Movant

Dated: 9/30/10                                    BY: /s/ Mark J. Giunta
                                                       Mark J. Giunta, Esq.
                                                       Attorney for Debtor-in-Possession